Jermaine S. BROWN, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 49S00–9901–CR–46.

Supreme Court of Indiana.

March 15, 2000.

Michael Gene Worden, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

Jermaine S. Brown was convicted of the murder of Michael Webster and conspiracy to commit that murder. He was sentenced to consecutive terms of sixty-five years for murder and forty-five years for conspiracy. Brown appeals contending that: (1) his right to a speedy trial under Criminal Rule 4 was violated; (2) the trial court erred in overruling his immunity objection to the State's evidence; and (3) the trial court admitted inadmissible hearsay at trial. We affirm the judgment of the trial court.

**Factual and Procedural Background**

On July 9, 1997, Ernestine Bonds was carjacked at gunpoint. Robert Bonds, her son, attempted to locate the individual responsible. Two days later, Bonds and several of his friends were at Brown's house when Bonds received a page, stated, "Revco, let's go," and left the house with at least two other men.

That afternoon Webster was shot to death by a group of men in the parking lot of a strip mall containing a Revco drugstore. After the shooting, two cars fled the scene pursued by a police officer who had heard the shots. The officer lost sight of one of the cars, but followed a white Oldsmobile into an alley. The driver of the Oldsmobile fled the scene, but the officer recognized him as either Brown or his brother, Jewan. The car proved to be owned by Brown's girlfriend, who initially claimed it had been stolen, but later admitted that Brown was using it with her permission.

The police located and questioned Brown and Jewan. Brown waived his rights and gave a statement in which he said he was with his father at the time of the shooting. On July 17, Brown was arrested and charged with murder, conspiracy to commit murder, and carrying a handgun without a license. Five months later, on December 2, Brown again waived his rights and told police that he went to the Revco store because he wanted to keep his little brother, Jewan, out of trouble. In this account, when Brown arrived, he saw Jewan, Bonds, and a third man shoot Webster, whereupon he returned to the Oldsmobile and fled.

Jewan and Bonds were tried together and found guilty of murder and conspiracy to commit murder. *See Bonds v. State,* 721 N.E.2d 1238 (Ind.1999); *Brown v. State,* 720 N.E.2d 1157 (Ind.1999). Brown testified at that trial and was given immunity for the testimony. In his separate trial Brown testified to essentially the same account he gave in his December 1997 statement. At Brown's trial several eyewitnesses testified that Brown, Bonds, Jewan, and possibly others arrived at the parking lot in three different cars. All of these witnesses agreed that after identifying Webster the group approached him and killed him. Their testimony conflicted as to who fired the shots. An autopsy revealed that Webster had been shot with two different guns at least seventeen times. Brown was found guilty of murder and conspiracy to commit murder, but not guilty of carrying a handgun without a license.

## I. Criminal Rule 4

Brown first contends that he should be discharged because his right to a speedy trial under Criminal Rule 4 was violated. Criminal Rule 4(C) protects a defendant's right to a speedy trial as guaranteed by Article I, § 12 of the Indiana Constitution. *See Wooley v. State,* 716 N.E.2d 919, 923–24 (Ind.1999). It requires the discharge of any defendant "held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later...." Criminal Rule 4(C). Brown's claim appears to be based on the dubious contention that delays due to court congestion do not extend the one year period of Rule 4(C) unless they result in a trial setting after that period expires. *Cf. Isaacs v. State,* 673 N.E.2d 757, 762–63 (Ind.1996); *Andrews v. State,* 441 N.E.2d 194, 199–200 (Ind.1982).

■ Although a defendant is not obliged under this rule to push the matter to trial, a defendant whose trial is set outside the one-year period must object to the setting at the earliest opportunity or the right to discharge under the rule is waived. *See Diederich v. State,* 702 N.E.2d 1074, 1075 (Ind.1998); *Austin v. State,* 682 N.E.2d 1287, 1287–88 (Ind.1997). The time period for Criminal Rule 4(C) begins on the later of the date the information is filed or the date of the defendant's arrest. In this case, the information was filed on July 16 and Brown was arrested on July 17, 1997. After several continuances due to court congestion, on July 14, 1998, Brown's trial date was set for October 5. Brown acknowledges that he failed to object to the October 5 trial date when it was set and failed to file a motion for discharge in the trial court. He argues that this Court's waiver rules impermissibly shift the burden to bring the defendant to trial within a year from the State to the defendant.

As this Court has often stated:

The purpose of [Criminal Rule 4] is to assure early trials and not to discharge defendants.... [W]hen a ruling is made that is incorrect, and the offended party is aware of it, or reasonably should be presumed to be aware of it, it is his obligation to call it to the court's attention in time to permit a correction. If he fails to do so, he should not be heard to complain. The courts are under legal and moral mandate to protect the constitutional rights of accused persons, but this should not entirely relieve them from acting reasonably in their own behalf. We will vigorously enforce the right to a speedy trial, but we do not intend that accused persons should escape trial by abuse of the means that we have designed for their protection.

*Utterback v. State,* 261 Ind. 685, 687–88, 310 N.E.2d 552, 553–54 (1974); *accord State ex rel. Wernke v. Superior Ct.,* 264 Ind. 646, 649, 348 N.E.2d 644, 646 (1976). We do not agree that the waiver rules for Criminal Rule 4 impermissibly shift the burden of enforcement to the defendant or are "uncalled-for burdens" on the defendant's right to a speedy trial. To the contrary, the requirement that a defendant object to a trial date set after a Criminal Rule 4 deadline and move for discharge facilitates compliance by trial courts with the speedy trial requirement. The objective of the rule is to move cases along and to provide the defendant with a timely trial, not to create a mechanism to avoid trial. Accordingly, if the time period provided by the rule has not expired and a trial date is set for a date beyond that period, a timely objection must be made. The issue may not be raised for the first time on appeal when it is too late to do anything but discharge the defendant. Because Brown neither objected to the setting of the October 5, 1998 trial date nor moved the trial court for discharge, any claim of a violation of Criminal Rule 4 is waived.

## II. Immunity Objection

■ Brown also claims that the trial court erred in overruling his objection to

the State's evidence, which he contends was derived from his testimony in his co-conspirators' trial. There is no dispute that Brown was given use and derivative use immunity for his testimony. *See generally In re Caito,* 459 N.E.2d 1179, 1182–83 (Ind.1984) (explaining use and derivative use immunity). Brown contends that the State failed to demonstrate that it did not use his testimony or any evidence derived from his testimony in the case against him. The State responds that the prosecution established in a pretrial conference that none of Brown's testimony would be used against him. The State also contends that Brown's testimony was essentially the same as his statements to police that were not made under a grant of immunity, and therefore nothing was derivable from his testimony that was not equally available from his earlier nonimmunized statements.

On October 5, 1998, shortly before the start of Brown's trial, Brown objected to the State's evidence based on his grant of immunity. Specifically, he claimed that the State had the burden to show that it would not use his immunized testimony and that this burden could not be carried because the information Brown had given had colored the way in which the investigation was conducted and the witnesses were questioned. The State responded that it would present both eyewitness testimony and Brown's nonimmunized statements to the police. The State contended that neither would use any information obtained from Brown's immunized testimony. The State also claimed that the witnesses in Brown's co-conspirators' trial did not hear any of his testimony in that matter or see transcripts of Brown's testimony. The trial court concluded that "the State has established that there is an independent source to the information that these witnesses provide" and overruled Brown's objection.

▮ Indiana Code § 35–37–3–3 provides for the grant of use and derivative use immunity for a witness in a trial. Once immunized, "any evidence that the witness gives, or evidence derived from that evidence, may not be used in any criminal proceeding against that witness." Ind.Code § 35–37–3–3 (1998). Both the United States Supreme Court and this Court have held that use and derivative use immunity statutes are not unconstitutional infringements of the Fifth Amendment privilege against self-incrimination. *See Kastigar v. United States,* 406 U.S. 441, 462, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972); *Zicarelli v. New Jersey,* 406 U.S. 472, 475–76, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972); *Caito,* 459 N.E.2d at 1183–84. To ensure that the prohibition on using immunized testimony against the witness was effective, the Supreme Court stated:

"Once a defendant demonstrates that he has testified, under a state grant of immunity, to matters related to the federal prosecution, the federal authorities have the burden of showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence." This burden of proof, which we reaffirm as appropriate, is not limited to a negation of taint; rather, it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony.

*Kastigar,* 406 U.S. at 460, 92 S.Ct. 1653 (quoting *Murphy v. Waterfront Comm'n,* 378 U.S. 52, 79 n. 18, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964)). The same burden must be carried in a state prosecution of an immunized witness. *See Caito,* 459 N.E.2d at 1184 (applying *Kastigar* language to Indiana state courts).

The State has the "heavy burden of proving that all of the evidence it proposes to use was derived from legitimate independent sources." *Kastigar,* 406 U.S. at 461–62, 92 S.Ct. 1653. Although courts in this State have never addressed the sufficiency of a *Kastigar* hearing, it requires more than generalized arguments about the sources of the State's evidence. *See, e.g, United States v. Byrd,* 765 F.2d 1524, 1532 (11th Cir.1985) (courts generally resolve *Kastigar* issues with an adversarial

evidentiary hearing); *State v. Peters*, 637 N.E.2d 145, 149–50 (Ind.Ct.App.1994). In this case, the hearing conducted by the trial court was essentially an oral argument of counsel, not an evidentiary hearing. This is insufficient to establish that the evidence used against Brown was obtained wholly through independent sources, not through any of his immunized testimony. *See Block v. Consino*, 535 F.2d 1165, 1169 (9th Cir.1976) (good faith allegations are not enough, the government must show how it acquired the evidence).

■ Under these facts, however, it does not appear that a *Kastigar* hearing was necessary. Brown gave two statements to the police, one shortly before his arrest and one five months later. Neither of these statements was subject to his grant of immunity. At his trial, Brown testified that he had earlier testified at his brother's trial. He responded affirmatively when asked, "And your testimony that you gave at the trial, was it substantially the same thing that you said in the statement to the detective in December?" In *United States v. Lipkis*, 770 F.2d 1447, 1451 (9th Cir.1985), the Ninth Circuit held that there was no need for a full hearing where "there were only minimal differences between the May 1980 nonimmunized statements and the December 1980 immunized statements[.] [A] subsequent hearing would have served no purpose.... Because the May and December statements were substantially identical, all of the government's information reasonably could have derived from the May statements." We agree with the Ninth Circuit that a full *Kastigar* hearing is not required where the immunized testimony of the defendant/witness is already in the public domain. *Cf. United States v. Dynalectric Co.*, 859 F.2d 1559, 1580 (11th Cir.1988) (a full hearing is not necessary in all cases). Therefore, there was no error in failing to conduct a full hearing or in allowing the State to present its evidence at trial.

### III. Hearsay

■ Brown finally contends that the trial court erred by admitting inadmissible hearsay. At trial, the State called Brown's girlfriend, Shawntae Kelly. She was at Brown's home when she heard Bonds receive a page and state, "Revco, let's go." Brown objected to her recollection of Bonds' statements on the basis of hearsay. The trial court ordered the State to lay a foundation and then overruled a further objection by Brown. Brown claims that this statement was hearsay and therefore should not have been admitted. The State contends that "Revco, let's go" is not an assertion capable of being true or false and therefore is not hearsay.

■ Hearsay is an out of court statement, other than one made by the declarant while testifying at a trial or hearing, offered to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). A statement is hearsay only if it is offered to prove the truth of the matter asserted in the statement. *See* 13 Robert L. Miller, Jr., *Indiana Practice* § 801.302 (2d ed.1995). In this case, Kelly testified that Bonds stated, "Revco, let's go," after receiving a page. This evidence was not used to prove the truth of the matter asserted—that Webster was at Revco or that Bonds and his associates were headed there. Rather, the statement was used to show that there was prearrangement by Brown and the other conspirators. As such it was not hearsay. *See Buie v. State*, 633 N.E.2d 250, 255 (Ind.1994), *abrogated on other grounds by Richardson v. State*, 717 N.E.2d 32, 49 (Ind.1999); *see also United States v. Guyton*, 36 F.3d 655, 658 (7th Cir.1994). The trial court did not err by allowing Kelly's testimony of Bonds' statement.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and RUCKER, JJ., concur.