**FOR PUBLICATION**



ATTORNEY FOR APPELLANT:

**ERIC K. KOSELKE**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRIAN OTTE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 84A01-1108-CR-356 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VIGO SUPERIOR COURT
The Honorable Michael R. Rader, Judge
Cause No. 84D05-1011-FD-3756

**May 17, 2012**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

Following a jury trial, Appellant-Defendant Brian Otte appeals his convictions for Class D felony Residential Entry (Count 1);[1] three counts of Class B misdemeanor Battery (Counts 2, 3, 5);[2] Class A misdemeanor Criminal Mischief (Count 6);[3] Class A misdemeanor Operating a Vehicle While Intoxicated (Count 7);[4] Class B misdemeanor Failure to Stop after Accident Resulting in Damage to Unattended Vehicle (Count 8);[5] and the finding that he is a Habitual Offender (Count 9).[6] Upon appeal, Otte argues that he was tried in violation of Indiana Rule of Criminal Procedure 4 and that the trial court abused its discretion in permitting witness testimony that victims of domestic violence had a certain propensity to recant. We affirm.

## FACTS AND PROCEDURAL HISTORY

On the night of November 11, 2010, Colleen Amos, her boyfriend Justin Shaffer, and her infant child were at her residence on McKinley Boulevard in Terre Haute. At approximately 9:30 p.m. Amos received a call from Otte, her former boyfriend, asking to come over, which request Amos refused. At some point, Amos heard a person break into her house though the back door. Moments later, Otte, who did not have a key to the residence, appeared in Amos's living room, lunged at Shaffer, and began hitting him. Amos attempted to leave for help, at which point Otte forced his way in her direction,

---

[1] Ind. Code § 35-43-2-1.5 (2010).

[2] Ind. Code § 35-42-2-1(a) (2010).

[3] Ind. Code § 35-43-1-2 (2010).

[4] Ind. Code § 9-30-5-2 (2010).

[5] Ind. Code §§ 9-26-1-3; 9-26-1-8 (2010).

[6] Ind. Code § 35-50-2-8 (2010).

2

upsetting the car seat holding her sleeping infant, and punched her on the right side of her body. This knocked Amos to the ground on her hands and knees and caused her to feel pain. After Otte turned his attention once more to Shaffer, Amos escaped the house and sought help. As Amos spoke to a neighbor, she saw Otte leave the home. Amos reentered the home and locked it, whereupon she noticed her sleeping infant lying in the tipped car seat. Upon hearing crashing noises, Amos looked outside to see Otte repeatedly ramming her car with his truck. Otte subsequently broke into the house again, and fought with Shaffer. Scared for her life, Amos hid in the sunroom and called for help.

Terre Haute Police Officer William Ellerman responded to the scene, where he found that the back door to Amos's home was "all busted out," and the door jamb was destroyed. Tr. p. 91. Seelyville Town Marshall James Halley subsequently apprehended Otte following a traffic stop. Otte smelled of alcohol and admitted that he was drunk. A subsequent certified breath test, administered by Terre Haute Police Officer Theodore Lemke, revealed that Otte's blood-alcohol content was .14.

On November 15, 2010, the State charged Otte with seven charges arising out of the November 11-12 incidents. These charges included Class D felony residential entry (Count 1), Class A misdemeanor domestic battery (Count 2), Class A misdemeanor battery (Count 3), Class A misdemeanor invasion of privacy (Count 4), Class A misdemeanor criminal mischief (Count 5), Class A misdemeanor operating a vehicle while intoxicated endangering a person (Count 6) and Class B misdemeanor failure to

3

stop after an accident resulting in vehicle damage (Count 7). On March 10, the State filed an additional count alleging Otte to be a habitual offender (Count 8).

On March 15, 2011, Otte moved for a speedy trial pursuant to Indiana Criminal Rule 4(B)(1). On April 21, 2011, the State filed an amended information alleging ten counts, which included new Counts 9 and 10, two counts of Class A misdemeanor battery. On April 29, the State moved for a continuance of Otte's speedy trial, over Otte's objection, on the grounds that Officers Ellerman and Lemke would be on vacation outside of Indiana and unavailable as witnesses for the May 19, 2011 trial date.

The trial court held two hearings on the State's motion. At a May 4, 2011, hearing, the prosecutor indicated that, upon subpoenaing the State's witnesses, he had learned that Officers Ellerman and Lemke had made unrefundable out-of-state vacation plans which they wished to keep. The prosecutor argued that, pursuant to Indiana Criminal Rule 4(D), the State was permitted a continuance of up to ninety additional days when evidence, such as these officers' testimony, would not otherwise be available. The trial court asked the prosecutor to inform the officers that the county would reimburse them for the cost of moving their vacations, and it took the matter under advisement.

At the May 9, 2011, hearing, the prosecutor confirmed that at least one of the witnesses, Officer Ellerman, would be in Florida and was not inclined to change his vacation plans, even with reimbursement by the county. The trial court concluded that a two-week extension of the trial date was reasonable, granted the State's continuance on May 9, 2011, and reset the trial for June 2, 2011.

4

On May 11, 2011, the State filed a third amended information, replacing the habitual offender charge in Count 8 with a Class A misdemeanor battery charge and renaming the habitual offender allegation as Count 11. On June 2, 2011, the State filed a fourth amended information alleging the following nine counts: Class D felony residential entry (Count 1); Class A misdemeanor battery (Count 2); Class B misdemeanor battery (Counts 3-5); Class A misdemeanor criminal mischief (Count 6); Class A misdemeanor operating a vehicle while intoxicated endangering a person (Count 7); Class B misdemeanor failure to stop after accident resulting in damage to unattended vehicle (Count 8); and that Otte was a habitual offender (Count 9).

During the June 2-3, 2011 jury trial, defense counsel asked Amos on cross-examination about allegations she had made against Otte in October 2009 which she had subsequently recanted. Amos admitted having claimed three months after making the allegations that she had made them up after Otte began dating another woman. Amos testified at the instant trial that her true basis for recanting was that she had not wanted to go to trial. On redirect examination the prosecutor confirmed with Amos that, despite her recantation, Otte had ultimately been convicted of charges arising out of her allegations.

Following Amos's testimony, the State introduced testimony from domestic violence expert Yvonne Creekbaum, over defense counsel's objection, that victims of domestic violence routinely recant their stories. According to Creekbaum, whose testimony was not based upon the facts of the instant case, domestic violence victims may recant out of fear for their abuser or financial considerations, among other reasons.

5

Following trial, Otte was convicted of Count 1, Count 2 as a lesser-included Class B misdemeanor, Counts 3, 5, and 6-8, and he was found to be a habitual offender. At a July 13, 2011 sentencing hearing, the trial court imposed an aggregate sentence of eight and one-half years in the Department of Correction. Specifically, Otte received three years in the Department of Correction for Count 1; 180 days for each of Counts 2, 3, and 5, all to be served concurrent with each other and with Count 1; one year on Count 6, to be served concurrent with Count 1; and concurrent sentences of one year in the Department of Correction for Count 7 and 180 days for Count 8, with the sentence in Count 7 to be served consecutive to the sentence in Count 1. The trial court imposed an additional term of four and one-half years for Count 9, to run consecutive to the sentences in Counts 1 and 7.[7] This appeal follows.

## DISCUSSION AND DECISION

Upon appeal, Otte contends that his right to a speedy trial pursuant to Indiana Criminal Rule 4 was violated and that the trial court abused its discretion in admitting Creekbaum's testimony.

### I. Criminal Rule 4

#### A. Waiver

The State's first response to Otte's Rule 4 challenge is that it is waived. The State argues that Otte was required to move for discharge in addition to his objection in

---

[7] Notably, Count 9 alleged Otte's habitual offender status, so the accompanying finding and sentence should have been imposed as an enhancement to the felony conviction in Count 1 rather than as a separate conviction with a separate sentence. *See* Ind. Code § 35-50-2-8 (2010). Otte does not seek redress for this error.

6

order to preserve this claim for appellate review. The State cites *Brown v. State*, 725 N.E.2d 823, 825 (Ind. 2000) in support of this proposition. While *Brown* references "the requirement that a defendant object to a trial date set after a Criminal Rule 4 deadline and move for discharge," it later references these two requirements in the disjunctive, suggesting that either is adequate to preserve a Rule 4 challenge. *Id.* (finding waiver where defendant "neither objected" to the trial date "nor moved the trial court for discharge[.]"). As the *Brown* court emphasizes, the purpose of Rule 4 is to permit a defendant a timely trial, not a mechanism for avoiding one. *Id.* A defendant therefore cannot sit idly by and wait for a deadline to pass before complaining about it. Here, there is no suggestion that Otte sat idly by and waited for deadlines to pass, only that he used a single means, namely timely objections, to bring it to the court's attention. We are satisfied that this was enough to preserve the claim and decline the State's invitation to resolve this appeal on waiver grounds. *See id.* (additionally observing that defendant who does not make timely Rule 4 *objection* waives his right to discharge).

### B.     The Merits

### 1.     Applicable Law and Standard of Review

The right of an accused to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and by Article I, Section 12 of the Indiana Constitution. *Clark v. State*, 659 N.E.2d 548, 551 (Ind. 1995). This "'fundamental principle of constitutional law'" has long been zealously guarded by the Indiana Supreme Court. *Id.* (quoting *Castle v. State*, 237 Ind. 83, 85, 143 N.E.2d 570, 572 (1957)). To this end, the provisions of Indiana Criminal Rule 4 implement the defendant's speedy trial right. *Id.*

7

Indiana Criminal Rule 4(B)(1) provides in pertinent part as follows:

> If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar. Provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as set forth in subdivision (A) of this rule. Provided further, that a trial court may take note of congestion or an emergency without the necessity of a motion, and upon so finding may order a continuance. Any continuance granted due to a congested calendar or emergency shall be reduced to an order, which order shall also set the case for trial within a reasonable time.

Indiana Criminal Rule 4(B) specifically requires that, upon a motion for a speedy trial, a defendant must be tried within seventy days unless the defendant caused the delay or the court's calendar is congested. *Chambers v. State*, 848 N.E.2d 298, 301 (Ind. Ct. App. 2006), *trans. denied*.

In addition, Criminal Rule 4(D) states as follows:

> If when application is made for discharge of a defendant under this rule, the court be satisfied that there is evidence for the state, which cannot then be had, that reasonable effort has been made to procure the same and there is just ground to believe that such evidence can be had within ninety (90) days, the cause may be continued, and the prisoner remanded or admitted to bail; and if he be not brought to trial by the state within such additional ninety (90) days, he shall then be discharged.

Criminal Rule 4(D) provides that a trial court may grant the State a continuance when it is satisfied that (1) there is evidence for the State that cannot then be had; (2) reasonable effort has been made by the State to procure the evidence; and (3) there is just ground to believe that such evidence can be had within ninety days. *Chambers*, 848 N.E.2d at

8

303-04. This court has previously stated that any exigent circumstances may warrant a reasonable delay beyond the limitations of Criminal Rule 4. *Id.* "'The reasonableness of such delay must be judged in the context of the particular case[.]'" *Id.* (quoting *Smith v. State*, 802 N.E.2d 948, 951 (Ind. Ct. App. 2004)). In reviewing Criminal Rule 4 appeals, we employ two standards of review: we review the trial court's legal conclusions de novo but exercise deference with respect to its factual findings. *See Feuston v. State*, 953 N.E.2d 545, 548 (Ind. Ct. App. 2011) (resolving differing standards of review in Criminal Rule 4 cases).

## 2. Analysis

There is no dispute that Otte was charged on November 15, 2010; that he moved for a speedy trial on March 15, 2011; that the trial court granted the motion, setting the trial for May 19, 2011; that on April 29, 2011, the State moved to continue the trial, over Otte's objection, on the basis of allegedly unavailable witnesses; and that the trial court granted the continuance, setting the trial for June 2, 2011, which fell outside the seventy-day speedy trial period. In granting the State a continuance, the trial court found that a "short continuance of two weeks [was] reasonable." May 9, 2011 Hearing Tr. p. 8.

The State argues that Criminal Rule 4(D) permits the trial court to extend the trial date beyond the seventy-day period. "The absence of a key witness through no fault of the State is good cause for extending the time period requirements." *Wooley v. State*, 716 N.E.2d 919, 925 (Ind. 1999) (internal quotation omitted). Such absence may be due to a long-planned vacation. *See id.* (citing *Sims v. State*, 267 Ind. 215, 220, 368 N.E.2d 1352, 1354-55 (1977) (witness out of country on vacation)).

9

In *Wooley*, the State moved for a Rule 4(D) continuance on the basis that one of its witnesses was not in Indiana despite her assurances that she would be. 716 N.E.2d at 925. State police officers had spoken to the witness, who had indicated that she would return, and they had made arrangements for her return flight, which the witness ultimately did not board. *Id.* Based upon these efforts and what the *Wooley* court deemed to be reasonable reliance on the witness's assurances, the Rule 4(D) extension was justified. *Id.* This was so despite the fact that the witness was in Indiana on the actual date set out in her subpoena, which, as the *Wooley* court observed, there was no evidence to show the State could have known. *Id.*

Here, the State made multiple efforts to secure the witnesses, including offering to reimburse them for rescheduling their vacations. Yet at least one of the witnesses, who had long-planned to be in Florida, was not amenable to the State's requests. The trial court concluded that a short extension of the trial was reasonable and justified under Criminal Rule 4(D). The testimony at issue, which included that of the first officer to arrive on the scene and the officer to perform Otte's certified breath test, would have been essential to the State's case. Given the above precedent permitting Rule 4(D) extensions for witnesses who are out of State and/or on long-planned vacations, we too are satisfied that a Rule 4(D) extension was justified here.

Otte suggests that the State should have issued subpoenas compelling the witnesses to appear. The May 4, 2011, hearing transcript indicates that the prosecutor *did* issue subpoenas, which led to his discovery that the officers would be out of state on the date of trial. Whether the officers would have ultimately ignored the subpoenas is a

different question; in requesting a continuance, the State was entitled to rely upon their representations that they would be unable to comply. *See id.* (permitting Rule 4(D) continuance based in part on State's reliance on witness representations). We find no error.

## II.    Creekbaum's Testimony

Otte additionally challenges the trial court's admission of Creekbaum's testimony attesting to the propensity of domestic abuse victims to recant. The State introduced this testimony after Amos admitted during cross-examination that she had recanted her 2009 allegations against Otte. Otte claims that Creekbaum was not qualified under Indiana Evidence Rule 701 to give lay testimony; that Creekbaum was not qualified to be an expert witness under Rule 702; that Creekbaum's testimony constituted impermissible vouching testimony pursuant to Rule 704(b); and that it was overly prejudicial pursuant to Rule 403.

A trial court has broad discretion in ruling on the admissibility of evidence and we will disturb its rulings only where it is shown that the court abused that discretion. *Hoglund v. State*, 962 N.E.2d 1230, 1237 (Ind. 2012). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.*

### A.    Indiana Evidence Rule 701

Otte first contends that Creekbaum, who had made no personal observations of Amos, was not qualified to give lay testimony relating to the facts of this case. The State did not argue below, nor does it argue on appeal, that Creekbaum's testimony was

admissible as lay testimony. The State has always qualified Creekbaum's testimony as expert testimony. Otte's reliance on Rule 701, therefore, is misplaced.

### B.      Indiana Evidence Rule 702

Indiana Evidence Rule 702 provides as follows:

> (a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

> (b) Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable.

Under this rule, a witness may be qualified as an expert by virtue of "'knowledge, skill, experience, training, or education.'" *Kubsch v. State*, 784 N.E.2d 905, 921 (Ind. 2003) (citing Ind. Evid. R. 702(a)). Only one characteristic is necessary to qualify an individual as an expert. *Id.* As such, an individual may qualify as an expert based upon practical experience alone. *Id.* Expert testimony regarding "specialized knowledge" need not involve scientific principles and therefore need not comply with Rule 702(b). *See Malinski v. State*, 794 N.E.2d 1071, 1085 (Ind. 2003) (observing that expert testimony based upon specialized knowledge is not a matter of scientific principles governed by Rule 702(b)).

Otte's challenge under Rule 702 is that Creekbaum's testimony was not based upon demonstrably reliable scientific principles. But it need not have been; her status as an expert witness was due to her specialized knowledge about victims of domestic violence. As the *Malinski* court observed, "specialized knowledge" as referenced by

12

Rule 702(a) is not a matter of scientific principles. Creekbaum's qualification as an expert witness was instead based upon her twenty-three-year history of experience, training, and education in the area of domestic violence. Otte does not claim that this experience is inadequate to qualify her as an expert witness with specialized knowledge. Accordingly, we find no error on this ground.

## C.    Indiana Evidence Rule 704

Otte also claims that Creekbaum's testimony constituted impermissible vouching testimony in violation of Indiana Evidence Rule 704(b). Rule 704(b) states as follows: "Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions."

The State claims that Creekbaum's testimony was not vouching testimony because she never directly referred to the truthfulness of Amos's testimony. Creekbaum's testimony was introduced to provide an explanation for the phenomenon of recantation, after defense counsel opened the door to that issue, rather than to reflect upon the actual truth or falsity of either of Amos's 2009 or instant allegations. Significantly, Creekbaum's testimony was not directly tied to Amos; Creekbaum had not observed or examined Amos and was making non-specific statements about how victims of domestic abuse behave in general. This court has previously observed that expert testimony explaining the behavior of victims of domestic violence which is not based upon personal knowledge does not cross the line into impermissible vouching. *Iqbal v. State*, 805 N.E.2d 401, 409-10 (Ind. Ct. App. 2004).

13

Admittedly, Creekbaum's testimony operated to explain away Amos's recantation, arguably attesting to the truth of her past allegations and, consequently, the credibility of her testimony. Nevertheless, we cannot find a Rule 704(b) violation. In *Carter v. State*, 754 N.E.2d 877, 882-83 (Ind. 2001), the Supreme Court permitted, in a case involving an autistic child witness, expert testimony regarding autistic children's general inability to deliberately deceive others. While the Indiana Supreme Court recently overturned longstanding precedent permitting "indirect" vouching in child cases, *see Hogland*, 962 N.E.2d at 1237, it left *Carter* intact, reasoning that the child's autism "compounded the issues," confronting the jury with evidence which fell "'outside common experience,'" and that the expert testimony was necessary to "'supplement the jurors' insight.'" *Hoglund*, 962 N.E.2d at 1237 n.9 (quoting *Carter*, 754 N.E. 2d at 882-83).

The domestic abuse at issue in the instant case compounds the issue in the same way that autism compounded the issue in *Carter*. As this court has previously observed, the reactions and behaviors of domestic violence victims are not commonly understood by laypersons. *Odom v. State*, 711 N.E.2d 71, 75 (Ind. Ct. App. 1999), *trans. denied*. Consistent with this view, this court has endorsed the use of expert testimony about domestic abuse/battered woman syndrome to explain witness recantation. *See id.* at 72 n.2, 77 (domestic abuse); *Carnahan v. State*, 681 N.E.2d 1164, 1166-68 (Ind. Ct. App. 1997) (battered woman syndrome); *see also Iqbal*, 805 N.E.2d at 409-10 (affirming use of expert testimony to "educate[] the jury on the complexity of behavior of domestic violence victims"); Like in *Carter*, testimony regarding a victim's propensity to recant

14

in this context simply provides the jury with information outside its experience, permitting it to assess credibility based upon a more complete understanding of all potential factors at issue. We find no Rule 704 violation.

### D. Indiana Evidence Rule 403

Otte finally claims that Creekbaum's testimony was more prejudicial than probative, in violation of Indiana Evidence Rule 403. Rule 403 states as follows: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."

We have already concluded that Creekbaum's testimony had significant probative value by providing the jury a more complete picture of the potential circumstances at issue. As for the prejudicial effect of such testimony, Creekbaum specifically indicated that she had not examined Amos and knew nothing about her case. The jury was free to accept or dismiss Creekbaum's testimony as applicable or inapplicable to the instant case. We cannot conclude that this testimony was overly prejudicial.

### III. Conclusion

Having found no error in the trial court's Criminal Rule 4(D) continuance or its admission of Creekbaum's testimony, we affirm the trial court on both grounds.

The judgment of the trial court is affirmed.

VAIDIK, concurs in result with opinion.

CRONE, concurs.

15

# IN THE
# COURT OF APPEALS OF INDIANA

BRIAN OTTE,                              )
                                         )
    Appellant-Defendant,         )
                                         )
        vs.                  )     No. 84A01-1108-CR-356
                                         )
STATE OF INDIANA                         )
                                         )
    Appellee-Plaintiff.          )
                                         )

**VAIDIK, Judge, concurring in result.**

I concur in full with the majority opinion that the trial court did not err in granting a continuance or in admitting the testimony of Creekbaum, a domestic violence expert.

I write separately because I believe Creekbaum's testimony was admissible under Indiana Evidence Rule 702 as syndrome evidence to help the jury understand why Colleen Amos recanted certain allegations she had made against Otte. Battered Women's Syndrome ("BWS") helps to explain why a victim of domestic violence may recant allegations of violence against her abuser. Such syndrome evidence is admissible to counter the inference that the victim's behavior or statement is inconsistent with the event having occurred.

Otte challenges the admission of Creekbaum's testimony not because she was not qualified to give her expert opinion on the matter, she was, but, among other reasons,

16

because the scientific principles upon which Creekbaum's testimony rested were not reliable. I disagree. We have already held that BWS is a valid scientific theory under Rule 702. *Carnahan v. State*, 681 N.E.2d 1164, 1167 (Ind. Ct. App. 1997). And once a particular type of scientific evidence is admitted into evidence in Indiana courts, a trial court should take judicial notice of that fact. *McGrew v. State*, 682 N.E.2d 1289, 1291 (Ind. 1997).

I understand that Creekbaum, a non-lawyer, did not believe that evidence of BWS was admissible in Indiana. *See* Tr. p. 352. But, the reality is that it is. As such, her expert testimony regarding BWS, which we have previously found to be based on reliable scientific principles, is admissible. The trial court did not abuse its discretion by admitting this evidence.