**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**ELDEN E. STOOPS, JR.**
Law Offices of Elden E. Stoops, Jr.
North Manchester, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| RASHAWN SPEED, )<br><br>    Appellant-Defendant, )<br><br>        vs. )<br><br>STATE OF INDIANA, )<br><br>    Appellee-Plaintiff. ) | No. 35A02-1308-CR-696 |

APPEAL FROM THE HUNTINGTON CIRCUIT COURT
The Honorable Thomas M. Hakes, Judge
Cause No. 35C01-1208-FA-176

**May 28, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Rashawn Speed appeals his convictions for Class A felony child molesting, Class C felony child molesting, and Class B felony sexual misconduct with a minor. We affirm.

**Issues**

Speed raises three issues, which we restate as:

I.   whether the trial court properly admitted evidence at trial;

II.  whether there is sufficient evidence to support his convictions; and

III. whether he received ineffective assistance of counsel.

**Facts**

In 2004, Amy Thornsberry began dating Speed, who was over twenty-one years of age.[1] From March 2005 until April 2006, Speed and Thornsberry lived together in an apartment on Bartlett Street in Huntington. While Thornsberry and Speed dated, Thornsberry's thirteen-year-old niece, J.A.T., frequently spent weekends with them at the Bartlett Street apartment.[2] Speed's two young sons were also there at times along with J.A.T.'s younger sister. Sometimes the group would play hide-and-seek in the dark in the apartment. On one occasion, Speed told J.A.T. to hide in a bedroom. Speed met J.A.T. in the bedroom and kissed her and touched her breasts and bottom with his hand. On seven or eight occasions, Speed put his finger inside J.A.T.'s vagina.

---

[1] Speed was born in 1977.

[2] J.A.T. was born in October 1992.

2

In April 2006, Speed moved out of the apartment, and Thornsberry later moved into a friend's house on Canfield Street in Huntington. In November 2006, after J.A.T. turned fourteen, Thornsberry hosted a birthday party for Speed's son at the Canfield Street house. During a game of hide-and-seek, Speed met J.A.T. in the bathroom and put his mouth on her vagina.

J.A.T. did not report Speed's conduct to police until March 2011. Police investigated the allegations but, upon J.A.T.'s request, waited until J.A.T. graduated from high school to pursue criminal charges. The State charged Speed with one count of Class A felony child molesting and one count of Class C felony child molesting for Speed's conduct at the Bartlett Street apartment. The State also charged Speed with one count of Class B felony sexual misconduct with a minor relating to the conduct at the Canfield Street apartment and one count of Class D felony sexual misconduct with a minor that was alleged to have occurred in 2007 in Huntington County.

Speed was represented by two attorneys. Prior to trial, the trial court granted Speed's motion in limine, which prohibited "statements, questions or testimony as to any allegations or facts occurring outside of Huntington County Indiana." Amended App. p. 24. During the jury trial, evidence of J.A.T.'s troubled relationship with her mother and evidence of her cutting herself was presented to the jury. J.A.T.'s counselor, Joel Makin, testified about reasons victims of sexual abuse delay reporting the abuse and how sexual abuse manifests itself in victims. Makin also testified that he reported information from J.A.T. to the Department of Child Services ("DCS") as he was legally required to do.

3

The jury found Speed guilty of Class A felony child molesting, Class C felony child molesting, and Class B felony sexual misconduct with a minor. Speed was acquitted of the Class D felony sexual misconduct with a minor charge. He now appeals.

**Analysis**

*I. Admission of Evidence*

Speed challenges the trial court's admission of certain evidence. The admission or exclusion of evidence rests within the sound discretion of the trial court and is reviewed for an abuse of discretion. Conley v. State, 972 N.E.2d 864, 871 (Ind. 2012). "An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it." Id.

*A. Vouching*

Speed argues that the trial court improperly allowed Makin to vouch for J.A.T.'s credibility. Pursuant to Indiana Rule of Evidence 704(b), "Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions."

At trial, Makin testified over Speed's objection that it was common for molestation victims to wait to disclose the molestation. Makin was then questioned about why children wait to disclose sexual abuse, and Speed objected. The trial court overruled Speed's objection, Speed asked for a limiting instruction, and the trial court instructed the jury, "What I want the jury to understand at this point the witness is testifying with respect to general knowledge that he's obtained and not about [sic] specific case." Tr. p. 353. Makin explained that he generally sees two reasons for not disclosing sexual abuse:

4

"One is uh, power and control and another is a friendship or a relationship that could be injured by telling and disclosing." Id.

Makin then was asked how abuse manifests itself in a child's life. Makin testified over Speed's objection that abuse can manifest itself in different ways, including victims becoming sexualized or not taking care of themselves. Makin testified that abuse affects familial relationships and that victims contemplate harming themselves "a lot of the time." Id. at 357. When asked in what forms, Makin testified, "cutting or uh, prescription, alcohol, marijuana, any type of drug use, that is usually a big one." Id. Makin later testified that he counseled J.A.T. over twenty-six or twenty-seven sessions. Over Speed's several objections, Makin testified that he was required by law to report information he learned from J.A.T. to the DCS.

Speed contends that Makin's testimony tracked evidence in the case relating to J.A.T.'s behavior and that the jury would have made the connection to J.A.T. Speed also asserts that Makin's testimony about making a report to DCS confirmed that Makin believed J.A.T.'s allegations to be true. He claims that this type of vouching testimony was inadmissible. See Stewart v. State, 555 N.E.2d 121, 125 (Ind. 1990), (holding adult witnesses "are prohibited from making direct assertions as to their belief in the child's testimony, as such vouching invades the province of the jury to determine what weight to place on the child's testimony."), abrogated on other grounds by Lannan v. State, 600 N.E.2d 1334 (Ind. 1992); Hoglund v. State, 962 N.E.2d 1230, 1237 (Ind. 2012) (holding "indirect vouching testimony is little different than testimony that the child witness is

telling the truth. As such it is at odds with Evidence Rule 704(b). Further, we decline to carve out an exception to the rule for sex abuse cases." (footnote omitted)).

Relying on Otte v. State, 967 N.E.2d 540 (Ind. Ct. App. 2012), trans. denied, the State argues that Makin was not improperly vouching for J.A.T. At issue in Otte was the admissibility of a domestic violence expert's testimony about the propensity of domestic abuse victims to recant. In determining whether the expert's testimony was properly admitted, we observed:

> In Carter v. State, 754 N.E.2d 877, 882-83 (Ind. 2001), the Supreme Court permitted, in a case involving an autistic child witness, expert testimony regarding autistic children's general inability to deliberately deceive others. While the Indiana Supreme Court recently overturned longstanding precedent permitting "indirect" vouching in child cases, see Hoglund, 962 N.E.2d at 1237, it left Carter intact, reasoning that the child's autism "compounded the issues," confronting the jury with evidence which fell "'outside common experience,'" and that the expert testimony was necessary to "'supplement the jurors' insight.'" Hoglund, 962 N.E.2d at 1237 n.9 (quoting Carter, 754 N.E.2d at 882-83).

Otte, 967 N.E.2d at 548. We concluded that the domestic abuse at issue compounded the issue in the same way autism did in Carter and that the behaviors of domestic violence victims are not commonly understood by laypersons. Id. We held, "Like in Carter, testimony regarding a victim's propensity to recant in this context simply provides the jury with information outside its experience, permitting it to assess credibility based upon a more complete understanding of all potential factors at issue. We find no Rule 704 violation." Id.

6

As in Otte, we believe that Makin's testimony about why victims might wait to disclose abuse and what symptoms abuse victims might display was intended to provide the jury with information outside its experience and was not indirect vouching for J.A.T.'s credibility, regardless of whether the jury was informed that Makin counseled J.A.T. Further, any confusion about whether Makin was vouching for J.A.T.'s credibility was eliminated by the trial court's limiting instruction. See Banks v. State, 761 N.E.2d 403, 405 (Ind. 2002) ("A timely and accurate admonition is presumed to cure any error in the admission of evidence.") (citation omitted)). Also, we do not agree that Makin's testimony about making a report to the DCS because he was legally required to confirmed to the jury that Makin believed the allegations to be true. Makin's testimony on this point was brief and riddled with objections. It did not include any information about what he reported to DCS, nor did he indicate that he made the report because believed J.A.T. Speed has not established that the admission of Makin's testimony was reversible error.[3]

## B. Leading Questions

Speed argues that the trial court improperly allowed the State "far too much latitude" in its direct examination of J.A.T. over his objection. Appellant's Br. p 14. He contends that it was unnecessary to ask leading questions of J.A.T., who was twenty at the time of trial. Speed, however, does not provide us with any citations to authority. The failure to support an argument with cogent reasoning and citation to authority results

---

[3] Speed also argues that the admission of purported vouching testimony rises to the level of fundamental error. Fundamental error is not at issue here, where Speed repeatedly objected to Makin's testimony on vouching grounds. See Tr. pp. 341-66.

in waiver. See Cooper v. State, 854 N.E.2d 831, 834 n.1 (Ind. 2006); Ind. Appellate Rule 46(A)(8)(a). Waiver notwithstanding, Speed does not explain how he was harmed by this line of questioning and has not established that this type of questions amounts to reversible error. See Ind. Trial Rule 61 ("No error in either the admission or the exclusion of evidence . . . is ground . . . for reversal on appeal, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

## *C. Other Acts*

Speed also contends that the State improperly questioned J.A.T. about other acts that occurred outside of Huntington County in violation of the motion in limine. Speed specifically directs us to the State asking J.A.T. if certain acts were "the last acts that ever happened anywhere in Huntington County." Tr. p. 149. He argues that "the clear implication of the question can not be ignored nor can the prejudicial impact be avoided." Appellant's Br. p. 15. Speed, however, does not provide us with any legal authority to support this argument, and this argument is waived. See Cooper, 854 N.E.2d at 834 n.1; App. R. 46(A)(8)(a). Further, as the State points out, the allegations against Speed occurred over a long period of time at several different locations. Thus, this question did not raise the clear implication that other acts occurred elsewhere and is not a basis for reversing his conviction.

## *II. Sufficiency*

8

Speed argues there is insufficient evidence to support his convictions. Upon a challenge to the sufficiency of evidence to support a conviction, we do not reweigh the evidence or judge the credibility of the witnesses, and we respect the jury's exclusive province to weigh conflicting evidence. McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005). We must consider only the probative evidence and reasonable inferences supporting the verdict. Id. Said another way, appellate courts must affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. Id. (quotation omitted).

Speed appears to concede that J.A.T.'s testimony establishes all of the elements of Class A felony child molesting, Class C felony child molesting, and Class B felony sexual misconduct with a minor. His argument focuses on the lack of corroborating evidence, J.A.T.'s lack of credibility, and the veracity of her claims.[4] However, both J.A.T. and Speed testified at trial, and Speed was questioned about inconsistencies between his trial testimony and his statement to police. The jury, therefore, was able to assess their credibility. We must reject Speed's request to reweigh the evidence. There is sufficient evidence to support the convictions.

### III. Ineffective Assistance of Counsel

Speed argues that he received ineffective assistance of counsel and points to a variety of purported errors by his attorneys. For example, he claims that his attorneys

---

[4] Speed does not specifically invoke the incredible dubiosity rule.

failed to object to leading questions and irrelevant information, including testimony about the paternity of Thornsberry's son. Speed also argues that they failed to adequately challenge J.A.T.'s delay in reporting the abuse and failed to move to strike testimony about J.A.T. writing in a journal that she was in love with Speed. Speed claims:

> there may have been valid reasons for some of the issues raised in this section, but taken as a whole, there is a very strong likelihood that failures of Defense Counsel substantially prejudiced the rights of the Defendant in this trial and that it is very likely that the guilty verdicts were the result of these errors and oversights.

Appellant's Br. p. 22. Speed, however, fails to support argument with citation to authority, and this argument is waived. See Cooper, 854 N.E.2d at 834 n.1; App. R. 46(A)(8)(a).

## Conclusion

Speed has not shown that the admission of evidence was reversible error or that there is insufficient evidence to support the convictions. Speed's ineffective assistance of counsel claim is waived. We affirm.

Affirmed.

BAKER, J., and MAY, J., concur.

10