## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 12 2017, 8:28 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Paul J. Podlejski
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Milton Triplett,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | July 12, 2017<br><br>Court of Appeals Case No.<br>48A02-1611-CR-2628<br><br>Appeal from the Madison Circuit Court<br><br>The Honorable Angela Warner Sims, Judge<br><br>Trial Court Cause Nos.<br>48C01-1112-FD-2301<br>48C01-1601-F1-92 |

**Baker, Judge.**

[1]     Milton Triplett appeals his convictions for three counts of Level 1 Felony Child Molesting,[1] arguing that the trial court made evidentiary errors. Triplett also appeals the sentence imposed by the trial court, arguing that it is inappropriate in light of the nature of the offenses and his character. Finding no error and that the sentence is not inappropriate, we affirm.

# Facts

[2]     In October 2014, S.R. was twelve years old. At that time, S.R.'s mother, Jennifer McGuire, had parenting time with S.R. for two days per week, every other weekend, and on certain holidays. McGuire was dating Triplett, and the two had a two-year-old child together, K.T.

[3]     On the morning of October 17, 2014, S.R. was on fall break and was at McGuire's residence. McGuire was at work and Triplett and K.T., who was asleep in her room, were home. S.R. was asleep on the couch and woke up with Triplett on top of her. He kissed her and pulled her pants down; he was not wearing pants. Triplett removed her underwear and inserted his "hard" penis into her vagina. Tr. Vol. II p. 168. He kept his penis inside her vagina for ten to fifteen minutes; he then took a shower and made breakfast. Triplett told S.R. not to tell anybody. One to two weeks later, S.R. began noticing regular vaginal discharge that "was yellow and smelled bad[.]" *Id.* at 171, 214.

---

[1] Ind. Code § 35-42-4-3.

[4] Over the course of the next few months, Triplett forced S.R. to have sexual intercourse with him five to six other times. Each time, he climbed on top of her as she was sleeping in the morning, and the intercourse lasted for ten to fifteen minutes. K.T. was in the house during each incident; during the last incident in April 2015, K.T. interrupted the molestation. She walked into the room, saw S.R. and Triplett engaged in the act of intercourse, and yelled, "Daddy[.]" *Id.* at 180. He "kept going for a few minutes and then he just got off[.]" *Id.* S.R. is able to pinpoint the precise dates of most of the encounters because they coincided with specific events such as school breaks, holidays, or the death of her dog.

[5] In July 2015, S.R. started going to counseling after she began having suicidal thoughts and desires to cut herself. In September 2015, she was admitted to an inpatient hospital after relatives discovered that she had been cutting herself in multiple places on her hips, thighs, and arms; she remained in the hospital for one week and continued with regular intensive counseling thereafter. S.R.'s grades began dropping precipitously and her behavior changed.

[6] On January 7, 2016, S.R. went to the hospital because of severe back pain.[2] In the course of medical treatment, S.R. provided a urine sample, which tested positive for trichomoniasis, a sexually transmitted disease. One of the symptoms of trichomoniasis is abnormal vaginal discharge. After being

---

[2] The back pain was later determined to result from an unrelated cyst on S.R.'s tailbone.

questioned about who her sexual partner(s) had been, S.R. "broke and just told" the nurse practitioner that Triplett had been forcing her to have sex. Tr. Vol. II p. 186. Hospital employees then called the police.

[7] One week later, after S.R. had been forensically interviewed, Triplett was arrested. During transport, Triplett asked Officer Joshua Bowling why he was being taken to the police station; Officer Bowling responded that he did not know the facts of the case. Triplett then stated that "he possibly knew that it was involving, uh, his girlfriend and her thirteen (13) year old daughter." Tr. Vol. III p. 161-62. Triplett's medical records indicate that he had trichomoniasis in 2014 and 2015.

[8] On January 15, 2016, the State charged Triplett with three counts of Level 1 felony child molesting. Triplett's jury trial took place on September 7-9, 2016. At trial, Triplett attempted to introduce testimony from McGuire that she may have seen the aftermath of a sexual encounter between S.R. and a boy,[3] but McGuire was unable to provide a time frame for the incident so the trial court excluded the evidence. Triplett testified at trial and was permitted to testify that he had twice seen what he believed was the aftermath of a sexual encounter between S.R. and a boy, which he claimed occurred between July and August 2015 and November and December 2015, respectively.

---

[3] Triplett states that the reason he wanted this testimony introduced into evidence was to provide an alternate theory regarding the identity of the person who may have transmitted trichomoniasis to S.R.

[9] Also at trial, the State offered testimony from Barbara Vernon, who is an expert regarding child abuse. Vernon did not know anything about S.R. and had no knowledge of the facts in this case. Instead, she testified generally about the disclosure process of abused children, focusing on why child victims sometime delay disclosing the abuse. Vernon also explained what can break the delayed disclosure cycle and cause a child to disclose. At no point did Vernon comment about S.R.'s truthfulness or connect any of her comments to S.R. Triplett objected to the testimony, arguing that it was irrelevant and constituted improper vouching. The trial court overruled the objections and permitted Vernon to testify.

[10] At the conclusion of the trial, the jury found Triplett guilty as charged. On October 18, 2016, the trial court sentenced Triplett to three consecutive thirty-five-year terms, for an aggregate term of 105 years imprisonment. Additionally, Triplett was serving probation in another cause when he committed these offenses. The trial court revoked his probation in that cause and sentenced him to 365 days in that cause, with the 105-year term to be served consecutively to the 365-day term.[4] Triplett now appeals.

---

[4] The cause number under which Triplett's probation was revoked is 48C01-1112-FD-2301. That cause has been consolidated with the child molesting cause for the purpose of this appeal. Triplett makes no separate or unique arguments under FD-2301, simply wrapping that cause into his sentencing argument.

# Discussion and Decision

## I. Evidentiary Issues

Triplett first argues that the trial court erred by excluding McGuire's testimony regarding S.R.'s possible other sexual encounter and by admitting Vernon's testimony about child abuse victims in general. The admission and exclusion of evidence falls within the trial court's sound discretion, and we will reverse only if the decision is clearly against the logic and effect of the facts and circumstances before it. *Johnson v. State*, 6 N.E.3d 491, 498 (Ind. Ct. App. 2014).

## A. Evidence Regarding S.R.'s Sexual History

As a general rule, Indiana Evidence Rule 412 prohibits the introduction of evidence of prior sexual conduct of an alleged victim of a sex crime. *Id.* (noting that "Rule 412 is intended to prevent the victim of a sexual assault from being put on trial" and that it "reflects the insight of Indiana's Rape Shield Statute . . . that inquiry into a victim's prior sexual history is sufficiently problematic that it should not be permitted to become a focus of the defense"). In pertinent part, Rule 412 states as follows:

> (a) Prohibited Uses. The following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct:
>
> (1) evidence offered to prove that a victim or witness engaged in other sexual behavior; or

> (2)   evidence offered to prove a victim's or witness's sexual predisposition.
>
> (b)   Exceptions.
>
> > (1)   Criminal Cases. The court may admit the following evidence in a criminal case:
> >
> > > (A)   evidence of specific instances of a victim's or witness's sexual behavior, if offered to prove that someone other than the defendant was the source of semen, injury, or other physical evidence . . . .

Evid. R. 412.

[13]   Here, Triplett argues that the trial court erred by excluding McGuire's testimony that on one occasion, at some unspecified time, McGuire came home to find S.R. and a boy in her bedroom "and her bed was all messed up, and it smelled like sex." Tr. Vol. III p. 219. McGuire testified that she was "not sure of the date" on which that incident occurred. *Id.* at 224. The trial court ultimately concluded that because McGuire was unable to provide a specific time frame for the evidence, it was inadmissible. *Id.* at 237-38.

[14]   As noted above, the purpose for which Triplett sought to introduce this evidence was to call into question the identity of the person who transmitted trichomoniasis to S.R. That is permissible under Rule 412 so long as the evidence relates to "specific instances" of S.R.'s behavior to prove that someone other than Triplett was the source of the sexually transmitted disease. Evid. R.

412(b)(1)(A). But because McGuire was unable to provide a date on which the incident occurred—she was even unable to specify a particular year in which it happened—the evidence would not prove that anyone other than Triplett was the cause of the trichomoniasis. Because the evidence did not fall under an exception to Rule 412, the trial court properly concluded that it was inadmissible.

[15] Even if the trial court had erred, however, Triplett testified as to the very same incident. Tr. Vol. IV p. 63-74. Indeed, Triplett went into even greater detail, testifying about two separate instances and two separate boys who may have transmitted the disease to S.R. *Id.* Consequently, McGuire's testimony would have been merely cumulative of Triplett's, and any error in the exclusion of that testimony would have been harmless. *Johnson*, 6 N.E.3d at 499. We decline to reverse on this basis.

## B. Expert Evidence Regarding Child Abuse Victims

[16] Next, Triplett argues that the trial court erred by admitting Vernon's testimony about the dynamics of child abuse, the disclosure process, and when and why a child may delay disclosure because the testimony "amounted to improper vouching on behalf of the victim and the prejudicial effect it had was far greater than the probative value." Appellant's Br. p. 19.

[17] This Court has previously—and recently—found that precisely this type of general expert testimony about the dynamics of child abuse in the context of a child molestation case is admissible and helpful to the jury. *E.g.*, *Carter v. State*,

31 N.E.3d 17, 29-30 (Ind. Ct. App. 2015), *reh'g denied*, *trans. denied*.  In *Carter*,

the defendant was alleged to have molested one of his wife's children.  The

victim, M.N., was forensically interviewed by Patricia Smallwood, a forensic

interviewer and expert on child sexual abuse.  At trial, the State presented

Smallwood's testimony:  "she did not testify about M.N. or his individual case,

instead offering generalized testimony about how children deal with sexual

abuse, the disclosure process, and the matter of when and why children recant

or retract their disclosures of abuse."  *Id.* at 29.  On appeal, Carter argued that

the admission of this evidence was erroneous because it indirectly vouched for

the victim.  This Court disagreed:

> Although Smallwood interviewed M.N., she never mentioned
> M.N. in her testimony or made any statement or opinion
> regarding the truth or falsity of M.N.'s allegations of molestation.
> Smallwood did not purport to have any opinion regarding the
> case at bar, nor did she refer to any specific facts at issue.  Her
> testimony was broad, generalized, and included reference to
> results of research studies.  In her testimony, she confirmed that a
> recantation could mean that no abuse had occurred.  We note,
> and as the State reminds us, this court has permitted expert
> testimony explaining the behaviors and dynamics associated with
> domestic violence, including that associated with why a victim
> may recant.  *Otte v. State*, 967 N.E.2d 540, 548 (Ind. Ct. App.
> 2012), *trans. denied*. . . .  We find that Smallwood's testimony
> likewise provided information to the jury beyond that commonly
> understood by laypersons, and, under the circumstances before
> us, her expert testimony did not constitute impermissible
> vouching testimony.

*Id.*

[18] In this case, Vernon's testimony was nearly identical to the expert testimony in *Carter*. Vernon's testimony was broad and generalized, she never made any statement or professed an opinion regarding the truth or falsity of S.R.'s allegations, she did not purport to have any opinion regarding the case at bar, and she did not refer to any specific facts at issue. The one distinguishing characteristic between Smallwood and Vernon is that Vernon never interviewed S.R., which makes Vernon's testimony even *more* general than Smallwood's. Here, as in *Carter*, we find that the testimony was not improper vouching evidence and that it was relevant and helpful to the jury. Consequently, the trial court did not err by admitting Vernon's testimony.

## II. Sentencing

[19] Finally, Triplett contends that the sentence imposed by the trial court is inappropriate in light of the nature of the offenses and his character.[5] Indiana Appellate Rule 7(B) provides that this Court may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. We must "conduct [this] review with substantial deference and give 'due consideration' to the trial court's decision—since the 'principal role of [our] review is to attempt to leaven the outliers,' and not to achieve a perceived 'correct' sentence . . . ." *Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014)

---

[5] While Triplett also recites the standard of review for errors in the sentencing process, such as consideration of improper aggravators, he makes no actual argument aside from a Rule 7(B) inappropriateness argument. Consequently, we will address only Rule 7(B).

(quoting *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013)) (internal citations omitted).

[20]    Here, Triplett was convicted of three Level 1 felonies.  For each conviction, he faced a term of twenty to fifty years imprisonment, with an advisory term of thirty years.  Ind. Code § 35-50-2-4.  The trial court imposed three consecutive thirty-five year terms, for an aggregate term of 105 years imprisonment, to be served consecutively to the 365-day term imposed for Triplett's probation violation in another case.

[21]    With respect to the nature of Triplett's offenses, he forced a twelve- to thirteen-year-old girl to have sex with him five to six times; his two-year-old daughter was present in the home each time and even walked into the room during one of the instances of intercourse.  He told S.R. not to tell anyone.  One to two weeks after Triplett first forced S.R. to have sex, she began displaying the symptoms of trichomoniasis.  As a result of Triplett's actions, S.R. has contracted a sexually transmitted disease, begun cutting herself, demonstrated dramatic changes in behavior, personality, and grades in school, and has been sent to an inpatient treatment facility on at least one occasion.  She continues to participate in intensive therapy.  We do not find that the nature of the offenses aids Triplett's argument.

[22]    With respect to Triplett's character, the record reveals that he manipulated McGuire into getting more parenting time with S.R. so that he could have greater access to the girl.  He has continued to refuse to take responsibility for

his actions and has never expressed remorse, instead blaming S.R. and her family for his actions. With respect to Triplett's criminal history, he has had nearly continuous contacts with the criminal justice system since 1989. His record shows frequent arrests for offenses such as battery, resisting law enforcement, disorderly conduct, and public intoxication. He has been convicted of disorderly conduct at least twice, operating a vehicle without financial responsibility, operating a motor vehicle without ever receiving a license, driving while suspended at least five times, theft, operating while intoxicated while endangering a person, and possession of cocaine or methamphetamine. He has failed to complete community service and has violated probation on at least four occasions. He was on probation for possession of cocaine or methamphetamine when he committed the offenses at issue in this case. In sum, Triplett shows an inability or unwillingness to comply with the rule of law and shows no concern for the well-being of his fellow citizens or, most crucially, the young victim of his crimes in this case. We do not find the sentence imposed by the trial court to be inappropriate in light of the nature of the offenses or Triplett's character.

[23] The judgment of the trial court is affirmed.

Barnes, J., and Crone, J., concur.