Jonathan J. ROSE, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 56A03–0601–CR–15.

Court of Appeals of Indiana.

April 28, 2006.

364

James R. Reed, Morocco, for Appellant.

Steve Carter, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Jonathan Rose appeals his conviction for Child Molesting, as a Class A felony. He presents a single issue for our review, namely, whether he was denied the effective assistance of trial counsel.

We reverse and remand.[1]

### FACTS AND PROCEDURAL HISTORY

On November 4, 2004, Rose lived with his brother Josiah Rose and Josiah's wife, Teresa, and their three children in Newton County. On that date, Teresa went to a friend's house to paint and wallpaper and left Josiah at home with their three children, including A.G., a six-year-old girl, and Rose. While at her friend's house, Teresa called Josiah and asked him to come over and help work on the house. Josiah agreed and left Rose to watch the children.

After her parents had left, A.G. watched a movie with her brother and sister. Eventually, Rose put A.G.'s siblings to bed while A.G. continued to watch the movie. Rose then called A.G. into the bathroom, and once she was there, he put his penis in her mouth. Thereafter, he took her to the living room and, while on the couch, he put his penis in her mouth again. Rose also put his tongue in A.G.'s mouth. While in the living room, Rose put on a movie

where "people put their privates in privates." Transcript at 21. Rose turned off the movie and took A.G. upstairs to Teresa and Josiah's room where he told A.G. to take off her underwear. He then "stuck his tongue in [A.G.'s] private" and also attempted to penetrate her vaginally. *Id.* at 27. While upstairs, Rose heard Teresa and Josiah return home, and A.G. put her underwear on and went to her bedroom.

Teresa went to check on her children and found A.G. crying. She asked A.G. why she was crying, and A.G. responded that she missed Teresa. Upon further questioning, A.G. told Teresa that Rose had been "teaching her how to love." *Id.* at 29. A.G. also told Teresa that Rose had put his penis in her mouth. That evening, Teresa took A.G. to a hospital for a physical examination. Dr. Mallik Chaganti conducted the examination of A.G. and testified, without objection, that he decided to take photographs of A.G. because "she was so convincing in the way she talked. I was very convinced about it[.]" *Id.* at 83. Dr. Chaganti's examination revealed redness around A.G.'s vagina and rectum, and he concluded that the trauma resulted from a "failed forced entry," and that the physical observations were consistent with A.G.'s allegations. *Id.* at 86.

When asked if A.G. cried during the examination, Dr. Chaganti testified, "She was not crying. Like I said, she was totally accepting of [Rose]. It was like he was the authority figure. Everything she did was accurate." *Id.* at 87. He also testified that A.G. complained of pain in her vaginal area. Then, near the end of his testimony, the following colloquy between the State and Dr. Chaganti occurred:

---

**1.** Rose also claims that he was denied the effective assistance of counsel because his attorney did not object to the admission of cumulative evidence and that the admission

of improper vouching testimony constituted fundamental error. But because we reverse and remand, we need not consider these claims.

State: The fact that swabs weren't performed correctly, or not at all essentially, does that change your opinion at all as far as what happened?

Dr. Chaganti: No, this was not about—it's not about medical evidence. This is about how a six-year-old can use such detail, such accurate [sic] and in such a convincing manner, that's what I think this case is about.

State: The subjective part.

Dr. Chaganti: Yes.

\* \* \* \* \* \*

State: That's based on your experience?

Dr. Chaganti: Yes. And I have a five-year-old daughter, too, so I know what they talk about and there's—there was a calmness about her. There was a—there was no nervousness in her voice, such a lucid manner, the way she talked about this, or else I probably would've ended it there[.] So ... the main evidence here is what the child said and what I felt, you know, what the child said.

*Id.* at 98.

At the conclusion of the trial the jury found Rose guilty of child molesting, as a Class A felony, and the trial court entered judgment of conviction. This appeal ensued.

## DISCUSSION AND DECISION

Rose contends that his trial counsel was ineffective because his counsel did not object to vouching testimony by Dr. Chaganti. A defendant claiming a violation of the right to effective assistance of counsel must establish the two components set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Young v. State*, 746 N.E.2d 920, 926 (Ind.2001). First, the defendant must show that counsel's performance was deficient. *Strickland*, 466 U.S. at 687, 104

S.Ct. 2052. This requires a showing that counsel's representation fell below an objective standard of reasonableness, *Id.* 466 U.S. at 688, 104 S.Ct. 2052 and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment, *Id.* 466 U.S. at 687, 104 S.Ct. 2052. Second, the defendant must show that the deficient performance prejudiced the defense. *Id.* To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

■ Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference. *Id.* at 689, 104 S.Ct. 2052. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690, 104 S.Ct. 2052. The *Strickland* Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. *Id.* at 689, 104 S.Ct. 2052. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Ingram v. State*, 508 N.E.2d 805, 808 (Ind.1987).

### Deficient Performance

■ In the present case, Rose claims that Dr. Chaganti's testimony that he was "very convinced" by the way A.G. described the incident to him is improper because "[n]o witness ... is competent to testify that another witness is or is not telling the truth." *Stewart v. State*, 555 N.E.2d 121, 125 (Ind.1990) (*abrogated on*

*other grounds by Lannan v. State,* 600 N.E.2d 1334 (Ind.1992)). Thus, he maintains that his trial counsel should have objected to Dr. Chaganti's repeated testimony that he was convinced by A.G.'s allegations. When an appellant predicates an ineffective assistance of counsel claim on counsel's failure to object, the appellant must demonstrate that a proper objection would have been sustained. *Nuerge v. State,* 677 N.E.2d 1043, 1049 (Ind.Ct.App. 1997), *trans. denied.*

 Indiana Evidence Rule 704(b) provides in relevant part that a witness may not offer an opinion concerning the *truth or falsity of allegations* or whether a witness has testified truthfully. (Emphasis added). Such testimony is an invasion of the province of the jurors in determining what weight they should place upon a witness's testimony. *See Head v. State,* 519 N.E.2d 151, 153 (Ind.1988). In the context of child molesting, however, our supreme court has recognized that where children are called upon to describe sexual conduct, a special problem exists in assessing credibility since children often use unusual words to describe sexual organs and their function and since they may be more susceptible to influence. *Stewart,* 555 N.E.2d at 125. Therefore, testimony is allowed which permits

> some accrediting of the child witness in the form of opinions from parents, teachers, and others having adequate experience with the child, that the child is not prone to exaggerate or fantasize about sexual matters. Such opinions ... facilitate an original credibility assessment of the child by the trier of fact
> . . . .

*Id.* (quoting *Lawrence v. State,* 464 N.E.2d 923, 925 (Ind.1984), *abrogated on other grounds by Lannan,* 600 N.E.2d at 1338–39). Thus, adult witnesses are allowed to state an opinion as to the child's general competence and ability to understand the subject, but are prohibited from making direct assertions as to their belief in the child's testimony. *Id.* (citations omitted).

 In the present case, Dr. Chaganti's testimony did not address whether A.G. was prone to exaggerate or fantasize about sexual matters. Instead, he referred to her credibility and how convincing her allegations were at least *eight* times during his testimony. Specifically, Dr. Chaganti testified that the case was "not about medical evidence. This is about how a six-year-old can use such detail, such accurate [sic] and in such a convincing manner. That's what I think this case is about." Transcript at 98. He also stated that during his examination of A.G. "she was so convincing in the way she talked. I was very convinced about [her allegation], so I proceeded to [conduct an examination]." *Id.* at 83. When asked about A.G.'s allegation, Dr. Chaganti testified that "she kind of went step by step and explained everything. Those are not the things that you can coach other people to say. You know, or put words in her mouth. That spontaneous—you—you would believe it. I mean that's—I mean she was so convincing." *Id.* Further, when the State questioned Dr. Chaganti on redirect about the physical evidence he documented during his examination of A.G., he stated, [I]t's not the medical details that are kind of intriguing about this case. It's the manner a[sic] six-year-old was able to tell me in such a lucid manner that really got me entrusted [sic] in this case. *Id.* at 97.

In *Shepherd v. State,* 538 N.E.2d 242, 243 (Ind.1989), our supreme court held that the State's witness should not have been allowed to state an opinion as to whether she believed that Shepard's pretrial denials of murder were true. In *Shepherd,* one of the State's witnesses testified that she was an inmate in jail with

Shepard and that she had often talked with Shepard about the alleged murder. The State's witness testified that Shepard had always denied having anything to do with the murder. The prosecuting attorney then asked "Do you believe that to be the truth?" *Id.* Over Shepard's attorney's objection, the trial court allowed the witness to answer. She responded that she "did not believe that [Shepard] was telling the truth when she denied killing the victim." *Id.* Our supreme court held that "such a question is highly improper," and reversed Shepard's conviction and remanded her case for a new trial. *Id.*

In the present case, Dr. Chaganti repeatedly testified about how "convincing" A.G. was when she described what had happened to her. Transcript at 83. Like *Shepherd,* this testimony was highly improper because Dr. Chaganti's testimony that he believed and was convinced by A.G.'s allegations invaded the province of the jury. *See Head,* 519 N.E.2d at 153. Therefore, Rose has demonstrated that a proper objection to Dr. Chaganti's vouching testimony would have been sustained.

### Prejudice

Next, Rose must demonstrate that there is a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* Rose alleges that Dr. Chaganti's testimony "left the jury firmly convinced of his belief in the truthfulness of A.G.'s statements." Brief of Appellant at 13. The State, on the other hand, claims that Dr. Chaganti's testimony that this case is about "how a six-year-old can use such detail, ... in such a convincing manner" is the "subjective part" of his examination and refers to the victim's "history" as provided to him. Brief of Appellee at

12. Thus, according to the State, "[Dr. Chaganti's] evaluation of the history given by the child was an integral part of his arrival at his diagnosis[,] ... [and] it was entirely proper for [him] to say that he considered [A.G.'s] manner, her lucidity and tranquility, and the amount of detail she gave in arriving at his diagnosis." *Id.* at 13.

But, again, it is well-settled that a witness may testify "as to whether or not the child is prone to exaggerate or fantasize and also to express an opinion as to the child's ability to accurately describe a sexual occurrence .... so long as they do not take the direct form of 'I believe the child's story,' or 'In my opinion the child is telling the truth.'" *Head,* 519 N.E.2d at 153 (quoting *Lawrence,* 464 N.E.2d at 925). While Dr. Chaganti did not use the words "I believe the child's story," or "In my opinion the child is telling the truth," that was certainly the import of his testimony.

Further, despite the State's insistence, Dr. Chaganti's statement that A.G. was "convincing" was not necessary to arrive at his diagnosis that there was a "failed forced entry." Transcript at 86. In *Walker v. State,* 621 N.E.2d 627 (Ind.1993) (*modified on reh'g by* 632 N.E.2d 723 (Ind. 1994)), the State charged Walker with two counts of murder. At trial, Walker "invoked the defense of insanity and a psychiatric examination disclosed that he was brain damaged at birth, was both retarded and mentally ill, and had a history of bizarre behavior including the torturing and killing of animals." *Id.* at 628. He was found competent to stand trial. A jury found him guilty on both counts, and the trial court entered judgment of conviction. Walker appealed and claimed that "it was fundamental error for the State to elicit from several experts their opinion of [his] guilt." *Id.* at 630. Our supreme court disagreed and stated that "the experts

were testifying as to their examination of appellant and their impressions of his truthfulness as it affected their examination. None of the witnesses undertook to testify concerning the truthfulness of appellant's testimony." *Id.* In contrast, Dr. Chaganti's testimony that he found A.G. convincing was not essential to his diagnosis and conclusion that there was a "failed forced entry." Transcript at 86.

Ultimately, Rose has demonstrated that Dr. Chaganti's vouching testimony was prejudicial. In fact, on cross-examination of Dr. Roberta Hibbard the State elicited testimony from Dr. Hibbard that the most important information used to determine what happened to a child in a molestation case is the child's own statement. She also stated that without A.G.'s statement, the physical evidence in this case, namely, the redness around A.G.'s vagina and rectum, is not helpful in determining whether she was molested because it does not "prove it one way or the other." *Id.* at 144. Thus, according to Dr. Hibbard, A.G.'s statement is absolutely necessary "to know what happened." *Id.*

Here, A.G. alleged that Rose put his penis in her mouth at least twice and that he told her that he was "trying to teach [her] how to love." *Id.* at 29. She also testified that Rose "stuck his tongue in my private" and "put his private in my private." *Id.* at 26. As noted above, Dr. Chaganti testified without objection that he "was very convinced about [her allega-

tions]." *Id.* at 83. He also stated that "you would believe [her story]." *Id.* Dr. Chaganti's vouching statements were neither inadvertent nor incidental but were the centerpiece of his testimony. Indeed, his testimony was not based on medical evidence but on his belief that A.G. was telling the truth.

In light of the inconclusive physical evidence, Dr. Chaganti's vouching testimony, in which he stated that he found A.G.'s allegations convincing, improperly bolstered A.G.'s credibility and impinged upon the province of the jury to determine the witness's credibility. Because much of the evidence supporting Rose's conviction is based on A.G.'s allegations and testimony, Rose has demonstrated that there is a reasonable probability that, but for counsel's failure to object to the admission of Dr. Chaganti's vouching testimony, the result of the trial would have been different. *See Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. Thus, we are constrained to reverse and remand for a new trial.

Reversed and remanded.

BAKER, J., and BAILEY, J., concur.