**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Jan 07 2015, 6:08 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**ANDREA L. CIOBANU**
**ALEX BEEMAN**
Ciobanu Law, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

MISHAEL JOHNSON )
)
    Appellant-Defendant, )
)
        vs. )    No. 49A02-1404-CR-292
)
STATE OF INDIANA, )
)
    Appellee-Plaintiff. )

APPEAL FROM THE MARION SUPERIOR COURT CRIMINAL DIVISION 1
The Honorable Kurt M. Eisgruber, Judge
Cause No. 49G01-1204-FC-027878

**January 7, 2015**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Mishael Johnson appeals his two convictions for class C felony child molesting. Johnson presents eight issues for our review, which we consolidate and restate as follows:

1. Did the trial court commit fundamental error by admitting vouching testimony?

2. Did the trial court abuse its discretion by excluding certain evidence pursuant to Indiana Evidence Rule 412?

3. Did the trial court abuse its discretion by excluding from evidence a comment Johnson made when police came to execute the search warrant at his house?

4. Was G.S.'s testimony incredibly dubious?

5. Did the State engage in prosecutorial misconduct?

We affirm.

G.S. was born in June 2004 and has at all times relevant to this case lived across the street from Johnson, who is married with five daughters. When G.S. began first grade, his mother asked Johnson's wife, Jamie, if they could provide after-school care for G.S. Jamie indicated that would not be a problem because Johnson worked third shift so that he could be home to get their kids off the bus. Accordingly, on school days over the next two years, Johnson picked up G.S. along with his daughters from the bus and kept G.S. for thirty minutes to an hour until one of G.S.'s older sisters could pick him up. G.S. enjoyed going over and playing with the Johnson children.

On April 24, 2012, J.P., G.S.'s eighteen-year-old sister and a senior in high school, left school early. She wanted cigarettes, so she went to Johnson's house and asked him for a ride to the gas station. He agreed, and on their return, Johnson asked to kiss her and indicated that he had never kissed anyone with a tongue ring before. Johnson also ran his

2

hands up and down her stomach. J.P. declined his advances and left. Later, when she went to pick up G.S. from the bus, Johnson approached her again. As G.S. went ahead into the house, Johnson asked her if she had ever been with a black man before. She responded no and then hurried into her house.

J.P. told her stepfather (Stepfather) of Johnson's advances upon his arrival home. Stepfather then called G.S. and J.P.'s mother (Mother) at work. Mother left work early to address the matter. On her way home, she spoke with a relative who queried whether Johnson had ever touched G.S. Mother initially rejected the idea but then thought about it more during her drive home and decided it was something she should ask.

Upon Mother's arrival home, J.P. had already been picked up by her biological father, so she asked G.S. to come downstairs. Mother told G.S. that he was not in trouble and that he needed to be honest with her. She then asked G.S. if Johnson had ever touched him inappropriately. G.S. appeared nervous and uncomfortable. After some hesitation, G.S. told Mother and Stepfather about one instance, which prompted Mother to go to Johnson's house to confront him. Stepfather followed behind. Johnson indicated that J.P. had come to his house during the day wanting cigarettes, but he denied ever touching either J.P. or G.S. Mother told him to stay away from her family.

Mother then went home and called J.P. While Mother was on the phone, Johnson knocked at their door and spoke with Stepfather. Johnson admitted that he was attracted to J.P. but indicated that he would never touch G.S. Mother told Johnson to leave her property. She then went upstairs, away from G.S., to call the police. Before the police arrived, G.S. told his family about two other incidents involving Johnson.

3

At trial, G.S. explained the following three instances. Though different, each incident occurred in Johnson's bedroom with the door shut. Johnson's daughters were in the house, but they were not present in the bedroom at these times.

In the first instance, G.S. was six years old. Johnson sat G.S. on the couch and gave him a PSP (a type of handheld gaming device) to play. Johnson placed a large pillow on G.S.'s lap and took off G.S.'s socks. G.S. then felt Johnson place something "kind of round" between his feet that he thought was part of Johnson's body but not a hand or foot. *Transcript* at 265. According to G.S., the object was kind of hard and soft. G.S.'s view was obstructed by the pillow, so he saw only Johnson's head, which was moving up and down a little. At some point, G.S. felt "weird stuff" on his feet that felt "kind of gooey". *Id*. During the investigation, Johnson's and G.S.'s fingerprints were found on a PSP that was recovered from inside a box high up in Johnson's bedroom closet. Testing also revealed that Johnson's seminal fluid was on the floor in front of the couch in his bedroom.

The second incident was when G.S. was seven years old. Once again, Johnson called G.S. up to the bedroom and closed the door. Johnson asked G.S. to sit with him in a green recliner that was in the room. G.S. sat in front facing away from Johnson. Johnson then took the child's hands and placed them behind G.S.'s back. G.S. felt the same "kind of round and hard and – hard and soft thing again." *Id*. at 273. He then felt the same gooey substance again. Afterwards, Johnson told G.S. to wash his hands and then go back downstairs. Investigators later recovered Johnson's seminal fluid from the green chair and the floor in front of the chair.

G.S. described a third incident that occurred when he was seven. G.S. stated that he was sitting on the floor in the bedroom watching television. Johnson placed a cardboard box between them and asked if G.S. would "help him with some clothes." *Id*. at 278. He had G.S. place his hand through a hole on the side of the box. Johnson then placed his own hand through the top of the box and moved G.S.'s hand around inside the box. Inside the box, G.S. "felt the same gooey stuff"[1] and the "same thing that [he] felt everytime". *Id*. at 281. With respect to all three instances, G.S. testified that he believed the object he felt was Johnson's "private part", the one used to "go number one with". *Id*. at 292.

The State charged Johnson with three counts of class C felony child molesting. Johnson's first trial, in July 2013, ended with a hung jury. The second jury trial commenced February 18, 2014. The jury found Johnson guilty of Counts I and II (those involving the first two incidents set out above) and was unable to reach a verdict on Count III. The trial court declared a mistrial as to Count III and entered convictions on the other two counts. On March 26, 2014, the trial court sentenced Johnson to eight years, with four of those years suspended. Johnson now appeals. Additional facts will be provided below as needed.

1.

Johnson contends that the trial court erred by allowing vouching testimony, as well as testimony regarding G.S.'s demeanor when initially reporting the molestations. This is the first of several evidentiary claims made by Johnson, and in this instance he claims a

---

[1] G.S. described the gooey stuff as looking clear and shiny on his hand. It did not feel like water or lotion.

violation of Ind. Evidence Rule 704(b).[2] Johnson acknowledges that he did not object below but argues that admission of this evidence amounted to fundamental error.

The admission or exclusion of evidence is within the discretion of the trial court, and we will disturb its rulings only where it is shown that the court abused that discretion. *Hoglund v. State*, 962 N.E.2d 1230 (Ind. 2012). An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances. *Id*. Moreover, errors in the admission of evidence are to be disregarded generally unless they affect the substantial rights of a party. *Id*.

When a party fails to object to evidence at trial, review of the issue is waived unless fundamental error occurred. *Id*. To be fundamental, "the error must represent a blatant violation of basic principles rendering the trial unfair to the defendant and thereby depriving the defendant of fundamental due process." *Id*. at 1239. "Harm is not shown by the fact that the defendant was ultimately convicted; rather harm is found when error is so prejudicial as to make a fair trial impossible." *Id*. Our Supreme Court has made clear that the fundamental error doctrine has "extremely narrow applicability". *Carter v. State*, 754 N.E.2d 877, 881 (Ind. 2001). "An appellate court receiving contentions of fundamental error need only expound upon those it thinks warrant relief. It is otherwise adequate to note that the claim has not been preserved." *Id*.

---

[2] Evid. R. 704(b) provides as follows: "Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions."

Though Johnson provides us with a number of excerpts from the testimony of various witnesses, we find that only one arguably amounts to vouching.[3] Mother testified in part as follows:

> Q. All right. And then GS proceeded to tell you about something that -- inappropriate that had happened at Mr. Johnson's house --
> A. Yes.
> Q. -- the defendant's home, is that right?
> A. Yes.
> Q. How did you react to what you heard?
> A. Well, I would best describe it as almost like in a movie scene -- when you're watching a movie, something happens and even though it's a short period of time so many things were flashing through my memory or my mind and I was -- I was asking myself -- GS used the word gooey -- it felt gooey and my mind immediately went to that was semen so I kept asking -- you know, playing this in my head -- could there be another explanation for this. GS is such a good kid. He's never in trouble. He never lies. Why would he make something up like this? Why would he lie about something like this? I -- I had no reason not to trust him.
> Q. But at the same time you were trying to not believe it, is -- is that -- do I understand you correctly -- you were tryin [sic] to find a reason maybe it wasn't true or he was mistaken?
> A. Well, yes -- I mean, I know that that was a big deal. He's got a wife and he's got children and I don't -- I wouldn't want to falsely accuse someone of anything but it's what I kept going back to in my mind, you know --
> Q. What he told you just didn't make any other sense?
> A. It didn't make any other sense to me, no.
> Q. All right. And what did you do once you kind of came to that conclusion -- I'm assuming this is like an inner-monologue within a movie, right?
> A. Yes, it was -- yes.
> Q. Were you yelling or screaming or anything else or was there any overreaction in the kitchen that you recall?
> A. No.

---

[3] Johnson's unpreserved claims regarding demeanor testimony are without merit. *See Malinski v. State*, 794 N.E.2d 1071, 1083 (Ind. 2003) ("the witnesses were testifying about [the victim's] demeanor: she appeared upset. They did not offer any opinion about whether any particular statement of Lori was true or not. This [Rule 704(b)] claim is without merit").

7

> Q. What did you do once you came to that, I guess, conclusion within yourself?
> A. I immediately went out the front door and went over to [Johnson's] house.

*Transcript* at 229-31.

Though troubling, we do not view Mother's testimony as directly vouching for G.S.'s credibility, and vouching was certainly not the focus of her overall testimony. This is unlike *Rose v. State*, 846 N.E.2d 363 (Ind. Ct. App. 2006), a case cited by Johnson on appeal. In *Rose*, the vouching statements came from a doctor who examined the alleged victim. The doctor testified repeatedly ("at least *eight* times") regarding the child's credibility and how convincing her allegations were. *Id.* at 367 (emphasis in original). The doctor's vouching statements were direct, deliberate, and "the centerpiece of his testimony." *Id.* at 369 ("[i]ndeed, his testimony was not based on medical evidence but on his belief that A.G. was telling the truth"). The challenged testimony in this case was marginal in comparison, and "its admission was not a blatant violation amounting to fundamental error." *Hoglund v. State*, 962 N.E.2d at 1239-40. Johnson has not established fundamental error.

2.

The next evidentiary claim raised by Johnson is whether his cross examination of Stepfather was improperly limited. Specifically, he claims the trial court abused its discretion by excluding evidence that Mother and Stepfather confronted G.S. about a

"[s]exual [e]ncounter" with another boy four to six months prior to the instant disclosures.[4]

*Appellant's Brief* at 22. The State objected to this evidence based upon Ind. Evidence Rule 412, and the trial court sustained the objection.

Evid. R. 412 generally prohibits evidence of prior sexual conduct of an alleged victim of a sex crime. *See Johnson v. State*, 6 N.E.3d 491 (Ind. Ct. App. 2014). The rule has exceptions, including when exclusion of the evidence "would violate the defendant's constitutional rights." Evid. R. 412(b)(1)(C). "A constitutional issue in this context arises only when access to relevant and substantial evidence affecting the credibility of a crucial witness against the accused would be excluded." *Conrad v. State*, 938 N.E.2d 852 (Ind. Ct. App. 2010).

We initially observe that Johnson has waived this issue by failing to follow the proper procedure for admitting evidence of prior sexual conduct. *See Johnson v. State*, 6 N.E.3d 491. Johnson does not deny that he failed to submit a written motion at least ten days before trial, as required by the rule. He argues, however, that we should ignore this omission because the State did not object on this ground below. We have expressly held otherwise, noting that "we may affirm a trial court's decision regarding the admission of evidence if it is sustainable on any basis in the record." *Id*. at 499.

Notwithstanding waiver, we conclude that Johnson has failed to establish, as an exception to Evid. R. 412, that exclusion of this evidence would violate his constitutional rights. Johnson asserts that the excluded evidence "suggests there may have been some

---

[4] Outside the presence of the jury, defense counsel indicated that the evidence would show that G.S.'s sister saw him in bed naked with another boy who was over to play. She reported the observation to Stepfather. Mother and Stepfather then had a discussion with G.S. indicating that this was not appropriate.

pressure to say something happened and a possible motive to fabricate *as an excuse for his prior transgressions.*"[5] *Appellant's Brief* at 25-26 (emphasis supplied). This line of reasoning escapes us. In our view, the excluded evidence would not have had a substantial effect on the jury's assessment of G.S.'s credibility. Accordingly, the trial court did not err in excluding it.

3.

During cross examination of a detective, Johnson sought to introduce evidence that upon being approached with the search warrant, Johnson stated, "this about the lady across the street and her daughter." *Transcript* at 447. The State objected to this evidence as self-serving and hearsay. Further, the State indicated that it could not complete the context of the statement because when the detective indicated he was there about G.S., Johnson "lawyer[ed] up". *Id.* The trial court sustained the objection.

On appeal, Johnson simply directs us to Ind. Evidence Rule 803(3), without setting out the text of the rule.[6] He then cites no relevant authority and fails to present cogent argument. Accordingly, we find the issue waived. *See Cooper v. State*, 854 N.E.2d 831 (Ind. 2006) (citing Ind. Appellate Rule 46(A)(8)(a))

4.

---

[5] Contrary to his assertion on appeal, there is no indication in the record that, when addressed by his parents, G.S. denied the incident with his friend.

[6] Evid. R. 803(3) provides in part that a "statement of the declarant's then-existing state of mind (such as motive, design, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health)" is not excluded by the rule against hearsay.

Johnson claims that G.S.'s testimony was incredibly dubious. In this regard, he relies exclusively upon alleged inconsistencies between G.S.'s testimony during this trial and the earlier one that ended in a mistrial.

Under the incredible dubiosity rule, we will impinge on a jury's responsibility to judge witness credibility only in very narrow circumstances "where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity." *Love v. State*, 761 N.E.2d 806, 810 (Ind. 2002). "Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it." *Id.*

Johnson argues that G.S.'s account of the alleged offenses was inconsistent and inherently improbable. It was not. We remind Johnson that inconsistencies between a witness's trial testimony and earlier statements made by the witness do not render the testimony inherently contradictory or incredibly dubious. *See Corbett v. State,* 764 N.E.2d 622 (Ind. 2002). The incredible dubiosity rule is not applicable here because G.S.'s testimony below was unequivocal and not coerced. Moreover, significant details of his testimony were supported by evidence found in Johnson's bedroom, including the PSP found on a high shelf in the closet, the fingerprints on the PSP, and Johnson's semen recovered from the green chair, the carpet in front of the chair, and the carpet in front of the couch.

We find Johnson's argument to be nothing more than an invitation to reweigh the evidence and judge the credibility of the witnesses, which we will not do. G.S.'s testimony,

11

along with the other evidence presented by the State, was sufficient to support the guilty verdicts in this case. Moreover, the jury was made aware of the alleged inconsistencies between G.S.'s testimony at the first and second trial. We decline to impinge on the jury's credibility determinations, as a reasonable person could certainly believe G.S.'s testimony. *See Campbell v. State*, 732 N.E.2d 197, 207 (Ind. Ct. App. 2000) ("[i]ncredibly dubious or inherently improbable testimony is that which runs counter to human experience, and which no reasonable person could believe"); *Hampton v. State,* 921 N.E.2d 27 (Ind. Ct. App. 2010) (holding that the testimony of the seven-year-old victim was not incredibly dubious and affirming the defendant's child molesting conviction), *trans. denied.*

5.

Finally, Johnson makes a cursory argument that the State engaged in prosecutorial misconduct. Recognizing that he did not assert this argument below, Johnson claims that the misconduct rose to the level of fundament error. *See Ryan v. State*, 9 N.E.3d 663, 667-68 (Ind. 2014) (where the claim has been procedurally defaulted, the defendant "must establish not only the grounds for prosecutorial misconduct but must also establish that the prosecutorial misconduct constituted fundamental error").[7]

Having already rejected Johnson's claim that the vouching/demeanor testimony amounted to fundamental error, the only claim of misconduct that remains is that the State knowingly elicited perjured testimony from G.S. In this regard, Johnson directs us, once

---

[7] Johnson has a lengthy quotation to *Ryan v. State*, 992 N.E.2d 776 (Ind. Ct. App. 2013) in his appellate brief. Our Supreme Court, however, granted transfer and vacated our opinion months before Johnson's brief was filed. We caution counsel that "use of authority which has been vacated is not looked upon favorably." *Lowry v. Lowry*, 590 N.E.2d 612, 619 n.3 (Ind. Ct. App. 1992), *trans. denied*.

again, to alleged inconsistencies between the child victim's testimony in this trial and his

testimony in the first trial that ended in a mistrial.[8]

> The knowing use of perjured testimony is fundamentally unfair and a conviction obtained by the use of such testimony will not be upheld. *Sypniewski v. State* (1980), 272 Ind. 657, 400 N.E.2d 1122. However, contradictory or inconsistent testimony by a witness does not constitute perjury. *Wallace v. State* (1985), Ind., 474 N.E.2d 1006. The jury, as fact finder, has the duty to resolve conflicting testimony.

*Evans v. State*, 489 N.E.2d 942, 948 (Ind. 1986). Nothing in the record supports Johnson's

assertion that the State coached G.S. to lie in the second trial. We find this claim of

prosecutorial misconduct entirely without merit.

Judgment affirmed.

KIRSCH, J., and CRONE, J., concur.

---

[8] The alleged inconsistencies are that in the second trial: 1) the child testified that the first molestation occurred on left side of the couch rather than right of center and 2) the child remembered additional details regarding the molestations, such as the defendant telling him to wash his hands after the second incident and being able to see defendant's head beyond the pillow during the first incident.