## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 27 2016, 8:33 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Timothy P. Broden | Gregory F. Zoeller |
| Lafayette, Indiana | Attorney General of Indiana |
| | Katherine Modesitt Cooper |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ellica Ann Houser, | December 27, 2016 |
| *Appellant-Defendant,* | Court of Appeals Cause No. 79A02-1603-CR-556 |
| v. | Appeal from the Tippecanoe Circuit Court |
| State of Indiana, | The Honorable Thomas H. Busch, Judge |
| *Appellee-Plaintiff.* | Cause No. 79C01-1502-FD-1 |

**Riley, Judge.**

## STATEMENT OF THE CASE

[1] Appellant-Defendant, Ellica Houser (Houser), appeals her conviction for neglect of a dependent, a Class D felony, Ind. Code § 35-46-1-4(a)(3) (2012).

[2] We affirm.

## ISSUE

[3] Houser raises two issues on appeal, which we consolidate and restate as the following single issue: Whether the trial court abused its discretion in admitting certain evidence.

## FACTS AND PROCEDURAL HISTORY

[4] Between December 2010 and December 2012, K.N.[1] lived with her mother, Houser, and her step-father, Michael Houser (Michael), at 4015 Jackson Highway, West Lafayette, Indiana. Between 2011 and 2012, K.N. was in the sixth and seventh grades. K.N.'s best friend was A.E., whom she had met in the sixth grade. The two girls were closely bonded and they spent most of their

---

[1] The charging Information and Affidavit of Probable Cause refers to K.N. as K.C. The record shows that K.N. was subsequently adopted and she changed her last name.

free time together. Often times, A.E. stayed at K.N.'s house overnight on the weekends.

[5] While living at Jackson Highway, every now and then, Michael would walk into the bathroom while K.N. was taking a shower "and he would ask if he could watch." (Tr. p. 260). After a while, Michael progressed from observing K.N.'s showers, and he would fondle K.N.'s breasts and vagina while he masturbated. Michael would stop touching K.N.'s breast and vagina after he ejaculated. According to K.N., Michael's abuse in the bathroom happened "every other day." (Tr. p. 266).

[6] On one occasion, Michael went into K.N.'s bedroom and touched K.N.'s breast and vagina with his hands. Thereafter, Michael inserted his penis into K.N.'s vagina but he did not "insert it all the way." (Tr. p. 268). Sometime between January or February 2012, K.N. was at home sleeping on the couch. Michael badgered K.N. to allow him to touch her and after several requests, K.N. agreed. At first, Michael touched K.N.'s breast and vagina with his hands. Next, Michael pulled K.N.'s shorts down, got on top of her, and inserted his penis into her vagina. According to K.N., Houser was always at home when Michael molested her; however, she specified that Houser was never in the same room during the abuse. When K.N. reported to Houser about Michael's abuse, Houser advised her "not to think a lot about it." (Tr. p. 281).

[7] Sometime in February 2012, Houser and K.N. got into an argument over a "tootsie roll that [Michael] had given" K.N. (Tr. p. 280). Houser ordered

K.N. to go to her bedroom but K.N. refused. Houser verbally abused K.N. stating that the only reason K.N. left her bedroom was "to fuck" Michael. (Tr. p. 280). Soon thereafter, the argument between Houser and K.N. escalated into a physical altercation. In the days that followed, K.N. reported Michael's yearlong abuse to her boyfriend, and a school counselor. The school counselor instructed K.N. to write down the allegations, and she thereafter alerted the Tippecanoe County Sheriff's Department and the Department of Child Services. Shortly after K.N.'s claims of sexual molestation surfaced, A.E. disclosed to her mother that Michael had raped her in 2011 when she had been left alone with him at K.N.'s house in West Lafayette. Subsequently, K.N. and A.E. were interviewed on several occasions at the Hartford House by Dawn Gross (Gross), a child forensic interviewer. In addition, Detective Jacob Amberger (Detective Amberger) interviewed Houser regarding K.N.'s allegations.

[8] On February 28, 2015, the State filed an Information, charging Houser with neglect of a dependent, a Class D felony, I.C. § 35-46-1-4(a)(3) (2012). On August 25, 2015, Houser, by counsel, filed a motion *in limine* requesting the exclusion of specific prior bad acts including, but not limited to "any photographs taken on a boat in White County." (Appellant's App. Vol. II, p. 103). On September 15, 2015, the trial court held an evidentiary hearing to hear all pending motions, including Houser's motion *in limine*. At the close of the evidence, the trial court took the matter under advisement. On December 16, 2015, the trial court denied Houser's motion, stating, in part, that "with

respect to the swim suit incident, the motion in *limine* is denied . . . . the evidence is relevant to show knowledge." (Appellant's App. Vol. II, p. 83).

[9] Houser and Michael were tried jointly during a three-day jury trial beginning on January 11, 2016. During trial, the State questioned K.N. regarding an incident in White County where Michael had untied her bikini top as well as A.E.'s. Prior to K.N.'s response, Houser's counsel requested a side bar outside the jury's presence, and after the conference, the trial court issued the following limiting instructions to the jury:

> Okay the defendants are charged with crimes committed in Tippecanoe County and you are now hearing some evidence about an incident that . . . allegedly occurred in White County. The . . . only purpose for which you may consider this evidence is to show the knowledge of [] Houser as to the charges against her, . . . and the intent or lack of mistake as to Michael['s] . . . charges against him. You're not to consider . . . the evidence of the White County incident for any other purpose.

(Tr. p. 275). K.N. proceeded to testify that in the summer of 2011, Houser, Michael, A.E., and herself all went to a lake in White County. K.N. stated that while on the boat, Michael unlaced her bikini top as well as A.E.'s and then she and A.E. jumped into the water. K.N. indicated that Houser observed Michael's acts since she was in the water floating "on the tube." (Tr. p. 278). K.N. stated that Michael ejaculated when she and A.E. jumped into the water. K.N. further stated that at a different time that same summer, while on the same boat, Michael took naked photographs of her and Houser both with their legs up in the air. Also, over Houser's objection, Gross, the child forensic

interviewer, testified on the dynamics of child sexual abuse including the disclosure process, reasons for delayed disclosures, and recantation of allegations.[2] Specifically, Gross specified that every child is unique and reacts differently to sexual abuse. Gross added that recantation did not mean that the abuse did not occur, and she further explained that most children that were sexually abused repudiated their assertions so as to avoid offending or upsetting their caregiver or parent. At the close of the evidence, the jury found Houser guilty as charged. On March 4, 2016, the trial court held Houser's sentencing hearing and subsequently sentenced her to an executed one and one-half years in the Indiana Department of Correction.

[10] Houser now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

[11] A trial court has broad discretion in ruling on the admissibility of evidence, and, on review, we will disturb its ruling only on a showing of abuse of discretion. *Sparkman v. State*, 722 N.E.2d 1259, 1262 (Ind. Ct. App. 2000). When

---

[2] The record shows that in June 2008, while living in Kentucky, K.N. alleged that her uncle had sexually molested her. However, during a forensic interview at the child advocacy center in Hopkinsville, Kentucky, K.N. recanted that allegation.

reviewing a decision under an abuse of discretion standard, we will affirm if there is any evidence supporting the decision. *Id*. A claim of error in the admission or exclusion of evidence will not prevail on appeal unless a substantial right of the party is affected. Ind. Evidence Rule 103(a). In determining whether error in the introduction of evidence affected a defendant's substantial rights, we assess the probable impact of the evidence on the jury. *Sparkman*, 722 N.E.2d at 1262.

[12] In her appellate brief, Houser argues that (1) the evidence in relation to the incidents that arose in White County were inadmissible pursuant to Indiana Evidence Rule 404(b); and (2) the trial court abused its discretion in admitting Gross' testimony since it amounted to indirect vouching for K.N.'s and A.E.'s testimonies.

## II. *Admission of Evidence*

[13] Houser argues that the trial court abused its discretion in admitting two prior bad acts: (1) Houser was present when Michael untied K.N.'s and A.E.'s bikini tops while they were on a boat in White County; and (2) the naked photographs that Michael took of her and K.N. Houser claims that the admission of these prior bad acts was in violation of Evidence Rule 404(b), as they could only have been admitted to show her propensity to commit the crime of neglect of a dependent. The State counters Houser's argument and states that the prior bad acts committed in White County were properly admitted as the evidence was relevant to show Houser's knowledge with respect to Michael's abuse of K.N.

[14] Indiana Evidence Rule 404(b) provides that evidence of other crimes, wrongs, or acts of a defendant is not admissible to prove the character of the defendant in order to show action in conformity therewith. "It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, *knowledge*, identity, or absence of mistake or accident." Evid. R. 404(b). (emphasis added). In assessing the admissibility of Evidence Rule 404(b) evidence, the trial court must (1) determine whether the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) balance the probative value of the evidence against its prejudicial effect. *Goldsberry v. State*, 821 N.E.2d 447, 455 (Ind. Ct. App. 2005). The well-established rationale behind Evidence Rule 404(b) is that the jury is precluded from making the forbidden inference that the defendant had a criminal propensity and therefore engaged in the charged conduct. *Id.* The list of "other purposes" in the Rule is not exhaustive; extrinsic act evidence may be admitted for any purpose not specified in Rule 404(b) unless precluded by the first sentence of Rule 404(b) or any other Rule. *Id.*

[15] The second step of a 404(b) analysis is to balance the probative value of the evidence against its prejudicial effect. *Id.* "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Evid. R. 403. "The trial court has wide latitude, however, in

weighing the probative value of the evidence against the possible prejudice of its admission." *Evans v. State*, 727 N.E.2d 1072, 1079 (Ind. 2000).

[16] We note that Evidence Rule 404(b)(2) specifies knowledge as one of the purposes for which evidence of other crimes, wrongs, or acts may be admitted. Such evidence is most commonly used to rebut the possibility that the defendant was unaware that a criminal act was being committed. 12 Robert L. Miller*, Jr., Indiana Practice: Indiana Evidence*, § 404.203 (3d ed. 2007). Further, in *Whitehair v. State*, 654 N.E.2d 296, 302 (Ind. Ct. App. 1995), we concluded that, with respect to a defendant's knowledge of the wrongfulness of his actions, evidence of a defendant's prior bad acts is only admissible when the defendant puts his knowledge at issue. Turning to the present case, in her opening statement, Houser, through counsel, explained that she was unaware of the ongoing abuse happening in her home. During trial, Houser cross-examined K.N. to show that K.N. did not explicitly report Michael's abuse to her, and she further presented evidence that she was not in the same room when Michael abused K.N. In short, Houser fostered the impression that she knew nothing about K.N.'s abuse in her home.

[17] Despite Houser's claim that the acts committed in White County were solely introduced to prove the forbidden inference of her propensity to commit the charged crime, we find that the evidence was introduced to challenge Houser's impression that she was unaware that K.N. had been subjected to sexual abuse by Michael in her West Lafayette home. Houser turned a blind eye to Michael's abuse and failed to take any necessary action to prevent or limit

Michael from having any contact with K.N. In addition, as noted, the trial court issued a limiting instruction to the jury to only consider the White County events as evidence of Houser's knowledge with respect to the charges proffered against her. When a limiting instruction is given that certain evidence may be considered for only a particular purpose, the law will presume that the jury will follow the trial court's admonitions. *Ware v. State,* 816 N.E.2d 1167, 1176 (citing *Hernandez v. State*, 785 N.E.2d 294, 303 (Ind. Ct. App. 2003), *trans. denied*)).

[18] Regarding the balancing required under Evidence Rule 403, we find that the trial court was well within its discretion in concluding that the probative value of K.N.'s testimony regarding the White County events was not substantially outweighed by the danger of unfair prejudice. In the instant case, the State presented substantial independent evidence of Houser's guilt such that we are satisfied that there is no substantial likelihood that K.N.'s testimony regarding the uncharged incidents that occurred in White County involving Houser contributed to her conviction. At trial, K.N. offered her compelling testimony recounting Michael's abuse on her in the bathroom, bedroom, and living room. According to K.N., Houser was never in the same room when the abuse occurred; however, K.N. indicated that Houser was aware of Michael's abuse. Specifically, K.N. testified that when she reported Michael's abuse, Houser "would say that it's okay or not to think a lot about it." (Tr. p. 281). K.N. also testified of an incident occurring sometime in February 2012 when she got into an argument with Houser over a tootsie roll that Michael had offered her. K.N.

indicated that when she failed to obey Houser's orders to return to her bedroom, Houser implied that the only reason she left her bedroom was "to fuck" Michael. (Tr. p. 280). In addition, the record shows that when Houser was initially interviewed by Detective Amberger of the Tippecanoe County Sheriff's Department concerning K.N.'s sexual abuse claims, Detective Amberger noted that Houser's "demeanor was kind of . . . victim blaming" and she accused K.N. of "flirting" with Michael. (Tr. pp. 406, 407). In light of the substantial independent evidence establishing Houser's guilt, we conclude that that the trial court was within its discretion in concluding that the probative value of K.N.'s testimony was not substantially outweighed by the danger of unfair prejudice.

### III. *Vouching Testimony*

[19] Finally, Houser challenges the trial court's admission of Gross' testimony arguing that it improperly vouched for K.N.'s and A.E.'s testimonies. Indiana Evidence Rule 704(b) provides that "[w]itnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." And, "[n]o witness, whether lay or expert, is competent to testify that another witness is or is not telling the truth." *Angleton v. State*, 686 N.E.2d 803, 812 (Ind. 1997). "Such testimony is an invasion of the province of the jurors in determining what weight they should place upon a witness's testimony." *Rose v. State*, 846 N.E.2d 363, 367 (Ind. Ct. App. 2006).

[20] During its case-in-chief, and after K.N. and A.E. had testified, the State presented the testimony of Gross, over Houser's objection. Gross, a forensic interviewer, provided expert testimony concerning the dynamics of child abuse, the disclosure process, and why a child may recant his or her disclosure of the abuse. Gross testified to a number of factors that contribute to a child's delay in disclosing abuse, including fear of shame, fear of being threatened, and worry of how they would be perceived. Gross added that negation of sexual abuse claims did not essentially mean that the abuse did not happen.

[21] We disagree with Houser that Gross' testimony ran afoul of Indiana Evidence Rule 704(b). In *Otte v. State*, 967 N.E.2d 540, 548 (Ind. Ct. App. 2012), *trans. denied*, our court permitted expert testimony explaining the behaviors and dynamics associated with domestic violence, including that associated with why a victim may recant. The *Otte* court noted that "the reactions and behaviors of domestic violence victims are not commonly understood by laypersons," and "testimony regarding a victim's propensity to recant . . . simply provides the jury with information outside its experience, permitting it to assess credibility based upon a more complete understanding of all potential factors at issue." *Id*. Although Gross interviewed K.N. and A.E., she never repeated K.N.'s and A.E.'s statements at trial. Also, Gross did not offer any opinion regarding the truth or falsity of K.N.'s and A.E.'s claims of molestation. It is evident from the record that Gross' testimony was based on her specialized training in interviewing child abuse victims and her experience investigating such cases. By eliciting only general, non-specific statements from

Gross, the State properly left the determination of K.N.'s and A.E.'s credibility to the province of the jury. For all of the above reasons, we conclude that Gross' testimony was not vouching testimony prohibited by Indiana Evidence Rule 704(b) and conclude that the trial court did not abuse its discretion by admitting the testimony into evidence.

## CONCLUSION

[22] Based on the foregoing, we conclude that the trial court did not abuse its discretion by admitting evidence in relation to the events that arose in White County; nor did it abuse its discretion by admitting Gross' testimony regarding the general nature of child abuse reports and recantations.

[23] Affirmed.

[24] Crone, J. and Altice, J. concur