## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 27 2018, 5:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David Shircliff
Lawrence County Public Defender Agency
Bedford, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jermaine Thornton,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 27, 2018

Court of Appeals Case No.
47A01-1706-CR-1266

Appeal from the Lawrence Superior Court

The Honorable Michael A. Robbins, Judge

Trial Court Cause No.
47D01-1612-F5-1619

**Pyle, Judge.**

# Statement of the Case

Jermaine Thornton ("Thornton") appeals his conviction, following a jury trial, for Level 6 felony domestic battery resulting in moderate bodily injury.[1] Thornton contends that the trial court abused its discretion by admitting testimony from an expert witness in domestic violence. Thornton, however, raises a different basis to support his appellate argument than he raised to support his trial objection and, as a result, has waived appellate review of his challenge to the admission of this evidence. Waiver notwithstanding, the trial court did not abuse its discretion by admitting the testimony. Moreover, even if it had, we affirm Thornton's conviction because we conclude that any error was harmless in light of the independent evidence of his guilt.

We affirm.

# Issue

> Whether the trial court abused its discretion by admitting testimony from an expert witness.

# Facts

In December 2016, Thornton was living with his girlfriend, Misty Daniels ("Daniels"). Thornton had dated Daniels for seven years, and they had a child together. Between December 10 and 18, 2016, Thornton hit Daniels multiple

---

[1] IND. CODE § 35-42-2-1.3.

times, causing her pain. Specifically, Thornton hit Daniels on her back, ear, and face.

[4] On December 19, 2016, when Daniels was in the locker room at her work, she showed her injuries to a co-worker, Crystal Stailey ("Stailey"). Stailey saw that Daniels had a "whole bunch of really red marks" on her back and saw that Daniels had some injuries on her ear and face. (Tr. Vol. 4 at 87). Stailey used her cell phone and took photographs of Daniels' injuries. Daniels "was scared" and did not file a report with the police. (Tr. Vol. 3 at 185). She looked into going to a women's shelter, but she ended up returning home.

[5] On December 28, 2016, Daniels went to work and told Stailey that Thornton had beat her with a belt the previous evening. Daniels alleged that Thornton put a belt around her neck, choked her, "made [her] perform oral sex on him[,]" and threatened to kill her. (Tr. Vol. 3 at 191). Additionally, Daniels alleged that Thornton hit her on the chest with the belt while he had sex with her, and she showed Stailey a mark on her breast. Stailey took photographs of Daniels' injuries and told Daniels that she "needed to get out of that relationship, out of that situation." (Tr. Vol. 3 at 195). After work, Stailey took Daniels to the sheriff's department, and Daniels reported what Thornton had done.

[6] The State charged Thornton with: Count 1, Level 5 felony intimidation; Count 2, Level 5 felony criminal confinement; Count 3, Level 6 felony sexual battery; Count 4, Level 6 felony strangulation; Count 5, Level 6 felony intimidation; Count 6, Class A misdemeanor domestic battery; Count 7, Level 4 felony

sexual battery; Count 8, Level 6 felony domestic battery resulting in moderate bodily injury; and Count 9, Level 6 felony domestic battery resulting in moderate bodily injury. All counts, except for Count 8, related to allegations that occurred on December 27. The battery allegation in Count 8 related to events occurring between December 10 and December 18.

[7] Prior to trial, the State and Thornton filed numerous pre-trial motions. Among the State's motions was its notice of its intent to present Rule 404(b) evidence at trial. Specifically, the State sought to introduce testimony from Daniels regarding Thornton's "repeated acts of domestic violence" against her during their seven-year relationship and regarding his threats to kill her if she left him or reported him to the police. (App. Vol. 2 at 36). The State argued that it wanted to present this evidence to show motive and the nature of the relationship between Thornton and Daniels.

[8] Thornton's motions included a motion objecting to the State's use of Rule 404(b) evidence and a motion to exclude a State's witness, Caryn Burton ("Burton"). Burton worked as a training coordinator at the Indiana Coalition Against Domestic Violence, and the State planned on calling her as an expert witness to discuss domestic violence. In his motion to exclude, Thornton alleged that Burton's proposed testimony—"to 'educate the jury' on why a victim of domestic battery might remain in a relationship with an abuser for a period of years—constituted "vouching testimony . . . in violation of Ind. Evid. R. 704(b)." (App. Vol. 2 at 54, 55). Additionally, Thornton filed a motion in

limine, seeking to prohibit Burton from testifying that "there is a very high statistical probability that [Daniels] is telling the truth." (App. Vol. 2 at 63).

[9] The trial court held a hearing on both parties' motions. During the hearing, the trial court heard Daniels' proposed testimony regarding the prior bad acts, and it heard testimony from Burton to determine whether her proposed trial testimony would be instructive for the jury. Thereafter, the trial court issued an order, "provisionally, and with a limited scope, grant[ing]" the State's 404(b) motion and granting, in part, Thornton's objection to the 404(b) evidence. (App. Vol. 2 at 76). Specifically, the trial court ruled that Daniels would be allowed to, "in general terms, describe the length and nature of her relationship" with Thornton but that she would not be allowed to testify to any prior bad acts. (App. Vol. 2 at 76).

[10] In regard to Burton's testimony, the trial court noted that Burton was "an alleged expert in matters of domestic violence and the behavior of those involved in such acts, both as victims and perpetrators." (App. Vol. 2 at 77). The trial court ruled that the State would be allowed to call Burton as a witness and that her testimony would be instructive for the jury given the lengthy, seven-year relationship between Thornton and Daniels. The trial court, however, granted Thornton's motion to limit Burton's testimony to a "broad and general analysis of victims of domestic violence." (App. Vol. 2 at 77). More specifically, the trial court ruled that Burton would be allowed to provide testimony "advising why alleged victims might choose to stay in longer term relationships with an alleged perpetrator" but that she could not testify or be

questioned about specific facts of this case. (App. Vol. 2 at 77). The trial court also granted Thornton's motion in limine precluding Burton from giving vouching testimony or specific opinion testimony that Daniels' testimony was truthful.

[11] In April 2017, the trial court held a three-day jury trial. Prior to the trial, the parties discussed the limitations on Daniels' testimony regarding the nature of her seven-year relationship with Thornton. The trial court clarified that Daniels could not discuss any prior abuse by Thornton and that the State should not ask her why she did not leave Thornton before the alleged abuse at issue in this case. The parties also discussed the trial court's rulings on Burton's testimony, and the trial court explained that the jury had a "right to understand in very general terms this, this whole dynamic of, of domestic violence." (Tr. Vol. 3 at 137).

[12] During the State's opening statement, the prosecutor told the jury that the case involved charges of domestic violence and that it was sometimes difficult to understand the behavior of people involved in a relationship with domestic violence. The prosecutor told the jury that the State would provide testimony that would help "explain the general principles of domestic violence and what goes on." (Tr. Vol. 3 at 162). Thornton's defense was that victim had made up the allegations against him. In his opening statement, Thornton's counsel stated that Thornton "didn't do what [Daniels] said he did." (Tr. Vol. 3 at 163).

[13] During Daniels' direct examination, the State questioned Daniels about the nature of her relationship with Thornton, and she testified that they "had [their] ups and downs." (Tr. Vol. 3 at 172). She also testified that she threw away the belt that Thornton had used to choke her. Also, during direct examination, the State asked Daniels "[w]hy didn't [she] leave [Thornton] before December 28th?" (Tr. Vol. 3 at 199). Thornton objected to the question before Daniels answered, and the trial court sustained the objection. The State then asked Daniels why she left Thornton on December 28, and she testified that she left him because she feared for her life and her child's life. (Tr. Vol. 3 at 199).

[14] Following Daniels' direct examination, Thornton moved for a mistrial based on the State's question of why she did not leave Thornton, arguing that it was contrary to the trial court's pre-trial ruling. The trial court agreed that the question posed was in violation of the trial court's order and the previous discussions between the court and the parties. The trial court stated that the question did not, however, rise to the level of sustaining Thornton's mistrial motion. Thus, the trial court denied Thornton's motion and informed Thornton that it would give an admonishment if he desired. Thornton stated that he would consider whether he wanted an admonishment.

[15] After the completion of Daniels' testimony, Thornton told the trial court that he was ready to have the trial court admonish the jury. The parties disagreed

regarding the scope of the admonishment.[2]  The trial court ultimately admonished the jury that it was "to disregard the question by the Chief Deputy Prosecutor . . . that [was] 'why didn't you leave the Defendant before December 28th?' that was a question propounded to Misty Daniels[.]"  (Tr. Vol. 4 at 17).  The trial court instructed the jury "to disregard that question and any answer related there to."  (Tr. Vol. 4 at 17).

[16]  Prior to the State calling Burton as a witness, Thornton's counsel argued that Burton should be excluded and conducted a voir dire of her.  Burton acknowledged that she did not have any personal knowledge of the facts of the offense and that her testimony was to provide information regarding domestic violence relationships.  Thornton argued that Burton should be excluded as a witness, contending Burton's potential testimony regarding victims feeling shame and blame "could be misused" and could "go to vouching" for Daniels.  (Tr. Vol. 4 at 16).  The State responded that it had already made Thornton "well aware" that it was going to elicit only "general testimony" from Burton and that there would be "no vouching" testimony.  (Tr. Vol. 4 at 16).  The trial court again denied Thornton's objection to Burton's testimony and noted that "we have been over this . . . the pretrial pleadings, we've been over it this morning, we're over it again[.]  I'm going to allow this witness to testify

---

[2] Thornton wanted the trial court to admonish the jury to disregard both the State's questions regarding Daniels leaving Thornton (i.e., why Daniels did not leave Thornton before December 28 and why she left him on December 28) as well as her response that she left because she feared for her life, while the State contended that the admonishment should cover only the first question.

pursuant to the prior orders of the Court." (Tr. Vol. 4 at 17). Thornton then renewed his motion for mistrial, and the trial court denied it.

[17] Thereafter, the State called Burton as a witness. Shortly after Burton started to testify, Thornton's counsel stated, "just for the record we would object and [would like to] show a continuing objection[.]" (Tr. Vol. 4 at 18). The trial court overruled the objection and stated that the "[c]ontinuing objection w[ould] be continued." (Tr. Vol. 4 at 18). Burton then testified and generally described domestic violence, its common misconceptions, and how victims' experiences could affect their ability to process memories and recall events. Burton also testified that she had not interviewed Daniels and did not know any details about the facts of the alleged offenses.

[18] The State also presented testimony from Stailey, who corroborated Daniels' testimony that she had injuries on her back, ear, and face in December 2016 and that she had shown those injuries to Stailey while the two women were at work on December 19. Stailey testified that she saw and took photographs of Daniels' injuries, and the State introduced the photographs as exhibits.

[19] After the State rested, Thornton testified on his own behalf. He denied hitting Daniels, putting a belt around her neck and choking her, and forcing her to have nonconsensual sex with him. He acknowledged that the State's exhibits showed that Daniels had some injury marks, but he denied causing any of the injuries.

[20] During closing arguments, Thornton's counsel argued that the jury should find Thornton not guilty of eight charges relating to the allegations of December 27 because Thornton had testified that he did not do them and because there was no physical evidence to support them. In regard to the domestic battery charge stemming from injuries Daniels had sustained between December 10 and December 18, Thornton's counsel acknowledged that the photograph in the State's exhibits showed that Daniels had injuries, but he argued that Daniels could have been injured at work.

[21] The jury found Thornton guilty of Count 8, the Level 6 felony domestic battery resulting in moderate bodily injury charge occurring between December 10 and December 18, and not guilty of the remaining charges. The trial court imposed a sentence of two and one-half (2½) years in the county jail.[3] Thornton now appeals.

# Decision

[22] Thornton argues that the trial court abused its discretion by admitting Burton's testimony regarding domestic violence. Specifically, Thornton contends that Burton's testimony was inadmissible under Indiana Evidence Rules 702, 404(b), and 403.

---

[3] During Thornton's sentencing hearing, he pled guilty to Class A misdemeanor invasion of privacy from a separate cause, and the trial court imposed a one (1) year sentence for this conviction and ordered it to be served consecutive to his sentence in this cause.

[23] The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for an abuse of discretion. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Conley v. State*, 972 N.E.2d 864, 871 (Ind. 2012), *reh'g denied*.

[24] The State argues that Thornton has waived appellate review of his admission of evidence issue because he did not object below on the same grounds that he raises on appeal. We agree.

[25] "A claim of evidentiary error may not be raised for the first time on appeal but rather must first be presented at trial[.]" *Hunter v. State*, 72 N.E.3d 928, 932 (Ind. Ct. App. 2017), *trans. denied*. "The failure to make a contemporaneous objection to the admission of evidence at trial, so as to provide the trial court an opportunity to make a final ruling on the matter in the context in which the evidence is introduced, results in waiver of the error on appeal." *Brown v. State*, 783 N.E.2d 1121, 1125 (Ind. 2003). Additionally, "[a]ny grounds for objections not raised at trial are not available on appeal, and a party may not add to or change his grounds in the reviewing court." *Hunter*, 72 N.E.3d at 932.

[26] Here, Thornton has waived his appellate challenge to Burton's testimony because his trial objection was based on only vouching under Evidence Rule 704 and not based on Evidence Rules 702, 404(b), and 403 that he now attempts to raise on appeal. Because he objected based on a ground other than

what he now attempts to raise on appeal, he has waived review of his appellate argument regarding this testimony. *See, e.g.*, *Brown*, 783 N.E.2d at 1125-26 (holding that the defendant had waived his argument regarding the admission of evidence where his objection at trial was based on grounds different than those on appeal).

[27] Waiver notwithstanding, we disagree with Thornton's argument that Burton's testimony was inadmissible under Evidence Rule 702. Specifically, he contends that the testimony was inadmissible under this evidentiary rule because there was no evidence presented "outside the realm of the jury's own knowledge and experience." (Thornton's Br. 26).

[28] Indiana Evidence Rule 702 provides as follows:

> (a) A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.
>
> (b) Expert scientific testimony is admissible only if the court is satisfied that the expert testimony rests upon reliable scientific principles.

Under Evidence Rule 702, a witness may be qualified as an expert based on knowledge, skill, experience, training, or education, and "[o]nly one characteristic is necessary to qualify an individual as an expert." *Otte v. State*, 967 N.E.2d 540, 547 (Ind. Ct. App. 2012), *trans. denied*. "As such, an individual may qualify as an expert based upon practical experience alone." *Id.*

Additionally, "[e]xpert testimony regarding 'specialized knowledge' need not involve scientific principles and therefore need not comply with Rule 702(b)." *Id.* (citing *Malinski v. State,* 794 N.E.2d 1071, 1085 (Ind. 2003)).

[29]    Burton worked for approximately twenty years in the domestic violence field, as both a victim advocate and a training coordinator. She testified that in her current position as a training coordinator for Indiana Coalition Against Domestic Violence, she has educated various groups on the dynamics of domestic violence. Burton's qualification under Rule 702 was based on her years of experience, training, and education in the area of domestic violence. Thornton does not argue that Burton's experience is insufficient to qualify her as an expert with specialized knowledge; instead, he contends that her experience did not assist the jury to understand the evidence. He also asserts that the jury already had its own knowledge and experience about domestic violence and that Burton's testimony "deprived the trier of fact of its opportunity to assess the weight of the evidence on its own." (Thornton's Br. 26).

[30]    Here, Thornton faced a charge of domestic battery against Daniels. The trial court explained that it was allowing Burton's testimony because the jury had a "right to understand in very general terms this, this whole dynamic of, of domestic violence." (Tr. Vol. 3 at 137). Our Court has explained that an expert witness's testimony regarding the complexity of behavior in domestic violence cases is relevant for educating the jury on the subject. *See Iqbal v. State*, 805 N.E.2d 401, 409-10 (Ind. Ct. App. 2004). When Burton testified, she generally

described domestic violence, its common misconceptions, and how victims' experiences could affect their ability to process memories and recall events. Burton also testified that she had not interviewed Daniels and did not know any details about the facts of the alleged offenses. Because Burton was qualified under Rule 702 to testify about domestic violence and because her testimony educated the jury and did not deprive the jury of its ability to assess the evidence, we conclude that the trial court did not abuse its discretion by admitting Burton's testimony. *See, e.g.*, *Otte*, 967 N.E.2d at 547 (holding that an expert witness's testimony regarding domestic violence was admissible under Evidence Rule 702); *Iqbal*, 805 N.E.2d at 410 (holding that an expert witness's testimony regarding domestic violence was admissible under Evidence Rule 702 and furthermore explaining that the witness's testimony "did not cross the line into impermissible vouching" were the witness had no personal knowledge of the case and had not counseled the victim).

[31] Moreover, even if the trial court had erred by admitting Burton's testimony, any error in the admission of this evidence was harmless.[4] "The improper admission of evidence is harmless error when the conviction is supported by substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction." *Cook v. State*, 734 N.E.2d 563, 569 (Ind. 2000), *reh'g denied*. *See*

---

[4] This harmless error analysis applies to Thornton's arguments regarding admissibility under Evidence Rules 702, 404(b), and 403.

*also Blount v. State*, 22 N.E.3d 559, 564 (Ind. 2014) ("If we are satisfied the conviction is supported by independent evidence of guilt such that there is little likelihood the challenged evidence contributed to the verdict, the error is harmless.").

[32] Here, the jury convicted Thornton of domestic battery against Daniels that had occurred between December 10 and 18, 2016, and there was substantial independent evidence that Thornton had hit Daniels during that period as alleged in Count 8. Daniels testified that her relationship with Thornton was "very strained" between December 10 and 18 and that he had hit her multiple times. (Tr. Vol. 3 at 175). She testified that Thornton had specifically hit her on her back, face, and ear, causing her pain and leaving her with marks or bruises from these injuries. Daniels' testimony regarding her sustained injuries was corroborated by Daniels' co-worker, Stailey, who saw and photographed Daniels' injuries and by the State's exhibits of those photographs depicting those injuries. Additionally, when Burton testified, she specified that she had not interviewed Daniels and did not know any details about the facts of the alleged offenses. Based on our review of the record and the evidence supporting Thornton's conviction, we are satisfied that the conviction is supported by substantial independent evidence of guilt and that there is no substantial likelihood that the challenged evidence contributed to the jury's verdicts and, therefore, conclude that waiver notwithstanding, even if the admission of the evidence was error, the error was harmless.

[33]     Affirmed.

Kirsch, J., and Bailey, J., concur.